57 P.(2d) 287

**SAFEWAY STORES, Inc., v. VIGIL et al., and three other cases.**

No. 4085.

Supreme Court of New Mexico.

April 20, 1936.

Frank H. Patton, Atty. Gen., and Hanna & Brophy, of Albuquerque (Hanna & Wilson and William A. Brophy, all of Albuquerque, of counsel), for appellants.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellee Safeway Stores, Inc.

Gwinn & Pell, of New York City, and Mechem & Hannett, of Albuquerque, for appellee J. C. Penney Co.

Botts & Botts, of Albuquerque, for appellee Montgomery Ward & Co.

Mechem & Hannett, of Albuquerque, for appellee S. H. Kress & Co.

SADLER, Chief Justice.

This appeal is before us on rehearing. We reach the same result as announced by the opinion heretofore handed down. The result resting upon another ground of invalidity, however, than that advanced in the former opinion, said opinion is hereby withdrawn and the following substituted therefor:

Safeway Stores, Inc., J. C. Penney Company, Montgomery Ward & Co., and S. H. Kress & Co. have separately sued to enjoin operation of Laws 1933, c. 73, and Laws 1934, Sp.Sess., c. 33, each of which acts requires a permit to engage in business as a retail dealer in merchandise, and imposes a tax, called an "occupation and license tax," upon such business. The amount of the tax is measured by gross annual sales.

Demurrers to the several complaints were overruled below and this appeal by the defendants, the state authority charged with collection of the tax, is from a

final judgment permanently enjoining them.

Explanation of how two similar legislative acts come thus to be challenged lies in the fact that following the enactment of the 1933 measure a petition to refer same to a popular referendum was filed with the secretary of state. The emergency clause not being attached to the act, the effect of the petition to refer, whose sufficiency the demurrers concede, was to prevent the act becoming effective, if subject to referendum, an assumption which the demurrers challenge. While this status continued, and prior to the general election at which the referred act, if referable, was subject to submission, the Special Session of the Eleventh Legislature, convening in Santa Fe on April 9, 1934, by Laws 1934, Sp.Sess., c. 33, purported to repeal the referred measure and, as plaintiffs charge, re-enacted the same without substantial change.

One question, present in each case, is decisive. Since the vice complained of involves a construction of the same language in each act, viz., the definition of "retail dealer," as found in section 1 thereof, only the later act need be discussed and future references will be to it except where otherwise indicated. The question is whether in exempting from the tax those retail merchants who do not sell "in small parcels, packages, bales, boxes or other containers," the act denies equal protection to the retailer who does thus sell.

Section 1, subpar. A of the act defines a "retail dealer" in the following language, to wit:

"'Retail Dealer' or 'Retail Dealers in Merchandise.' As used herein shall mean and include any person or persons, firm, association, partnership, stock company, company or corporation having a fixed and established place of business, dealing in merchandise by selling to the ultimate consumer for consumption or use and not for re-sale purposes in smaller quantities than that purchased, and who sells in small parcels, packages, bales, boxes or other containers of whatsoever kind and not in gross, except sales to Federal, State or County Authorities or Charitable Institutions."

The tax is imposed by section 3 of the act (Laws 1934, Sp.Sess., c. 33), the language of the imposition and the first bracket of said section reading:

"Merchants. A license tax or occupation tax to be collected by the State Comptroller and distributed as hereinafter provided, shall be imposed each year upon the business or avocations mentioned in this Chapter, carried on by any person within the State of New Mexico.

"First. Retail dealers in merchandise other than liquors, oil, gas and other motor fuel, peddlers, itinerant vendors and dealers in new or used automobiles, whose gross annual sales do not exceed three thousand dollars ($3,000.00) shall pay a license tax of two dollars ($2.00) per annum."

The subclassification is continued to the eleventh bracket in numerical order, the flat tax laid increasing in amount by moderate progression from bracket to bracket, based on volume of sales, until the eleventh bracket is reached. This bracket embraces retail dealers whose sales exceed $400,000. They must pay the flat tax of $500 imposed upon retail dealers occupying the tenth bracket who have sales in excess of $300,000 and not more than $400,000, and, in addition, "the sum of twenty-five dollars ($25.00) per thousand on all gross annual sales" in excess of $400,000.

The plaintiffs argue with much earnestness that this case is controlled by the decision of our highest court in Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 526, 79 L.Ed. 1054, somewhat recently decided. The defendants with no less vigor say the tax in the case at bar is of a different sort from that condemned in the Stewart Case; that it is in no respect different from the imposition upheld by the same court in the earlier case of Clark v. Titusville, 184 U. S. 329, 22 S.Ct. 382, 46 L.Ed. 569; and that the majority opinion in the Stewart Case, having discussed and distinguished the Titusville Case and having failed expressly to overrule it, thereby indicated its continued approval of the Titusville holding that the tax there challenged was not a denial of equal protection.

And, finally, the defendants say that, even if so much of the act as imposes the so-called surtax of $25 per thousand in the eleventh bracket should be held to fall within the interdiction of the Stewart Case, that, nevertheless, the remainder of the tax is plainly supported by the Titusville decision, and should be upheld.

In the Stewart Case, a Kentucky tax denominated in the act imposing it as "an annual license tax for the opening, establishing, operating or maintaining of any store," and which was held to be a "gross sales tax," was stricken down because denying equal protection of the law. The tax was laid upon a percentage basis as contradistinguished from the flat rate method of imposition employed in the enactments challenged in the case at bar and in the Titusville Case.

Persuasive arguments support the respective views thus urged upon us. In opening its discussion of the Titusville Case, the majority in the Stewart decision observed: "It is important to note the grounds of attack." It is thus suggested, at least inferentially, that had other grounds been urged, they might have prevailed. The idea that the Titusville Case has been overruled by implication rests upon a view in percentage perspective of the occupation tax there considered. For when so viewed it is subject, in its operating characteristics, to practically every criticism said of the tax in the Stewart Case. Even a pure occupation tax, when reduced to rates per cent., and so viewed, is a "tax upon the sales of merchants at rates *varying per sale or per*

*dollar* with the amount of their respec-, tive gross sales," and "operates to take as the tax a percentage of each dollar due or paid upon every sale," as said in the Stewart Case in criticism of the Kentucky tax. Thus considered, there seems little support for an assumption that the Titusville Case has any residue of life in it.

But the contrary idea denies the right to view the tax in percentage perspective, if it be indeed a true occupation tax. It asserts the real and distinguishing factor between the Stewart and Titusville Cases to be this: In the Stewart Case the court dealt with what obviously and concededly was a tax on gross sales, whereas in the Titusville Case the tax just as obviously was nothing more than an occupation tax. If an occupation tax, the thing taxed is not the sale, not the transaction, as is true of a sales tax, but a franchise, the privilege of doing business, of pursuing the occupation of retail dealer. When we look through and beyond the point of imposition, the grant of the privilege in exchange for the tax, we find the occupation tax, the property tax, and the gross sales tax each possessed of at least one common characteristic in that each may be made to reflect itself in the individual sale or transaction by reduction to rates per cent. But thus yielding themselves to mathematical manipulation makes of neither the property nor the occupation tax a sales tax. It is the method of imposing a tax of *the latter kind* employed in the Kentucky act which the Stewart Case indicts for inequality. And whatever the test which enabled our highest court to characterize as occupational the tax considered in the Titusville Case, whether the recognition of a reasonable relation between the amount of the tax and the privilege to be enjoyed, or otherwise, the tax here challenged certainly as to all of it save the surtax is so similar to that tax as to be indistinguishable and therefore must meet the decisive test.

Thus reasons unfold themselves to support the challenged acts. We find it unnecessary to resolve the question presented by these conflicting views upon the effect of the Stewart decision. It seems doubtful whether under either view imposition of the so-called surtax of the eleventh bracket could withstand the challenge of inequality laid against it under the authority of that decision. Likely, even the minority in the Stewart Case would find it difficult to sustain this portion of the tax. But we pass the question, as to which there is some difference of opinion, and proceed to a discussion of the decisive point heretofore mentioned.

■ Does the definition of "retail dealer" arbitrarily except a class of merchants from operation of the act? It is insisted that to impose the tax on merchants selling in "small parcels, packages, bales, boxes or other containers," etc., thereby exempting those who do not, creates a classification so whimsical, arbitrary, and capricious as to deny to those within the

classification chosen the equal protection of the laws. And, next, that the inclusion of the language last quoted renders the act so indefinite and uncertain as to effect its invalidity.

We are free to confess doubt and confusion as to the purpose of this language. Down to the point of its use a very satisfactory, and we may add, clear, definition of "retail dealer" is disclosed. Omitting unnecessary matter and the objectionable language, the definition reads:

" 'Retail Dealer' * * * as used herein shall mean and include any person * * * having a fixed and established place of business, dealing in merchandise by selling to the ultimate consumer for consumption or use and not for re-sale purposes in smaller quantities than that purchased."

This definition suggests itself as full, complete, and all-embracing. We may well assume that all retail merchants fall within it. Then what is the purpose and effect of the "and who sells" clause appended? The obvious suggestion arises that its purpose is to limit application of the act to a smaller class or group than that embraced by the generality and broadness of the definition immediately preceding, in addition to those expressly exempted by the language imposing the tax in section 3, viz., dealers in liquor, etc.

This much seems certain, if we give literal meaning to the language employed. We admit it is difficult to conceive of a re-tailer who does not on occasion sell some articles of merchandise in "small parcels, packages, bales, boxes or other containers." But there may be such; conceivably can be. Retail dealers in farm machinery and implements, retail coal dealers, retail lumber dealers, retail furniture dealers, and perhaps others, some of them perhaps never, and others but infrequently, sell in small packages or parcels. And to the extent that any do, the occasion is so rare that it would be an easy transformation without material loss, to eliminate such sales altogether and escape subjection to the tax. It is quite obvious that such a merchant, under the plain and literal terms of the statute, is not to have the tax applied to him, because he is not within the definition of "retail dealer" employed.

And so, giving the language used its natural and the only reasonable meaning to be attached, we have one class of retail merchants subjected to an occupational license measured by gross annual sales because some of the sales contributing to make up the whole have been of goods in "small parcels, packages, bales, boxes," etc., and another class relieved of the tax by the mere circumstance, perhaps peculiar to its particular line of merchandise, that its retailers do not find it either necessary or practical to sell in packages, bales, boxes, or containers.

Can such a measure withstand the challenge that as between the two classes the act denies equal protection of the laws

to those within the class taxed? We think it cannot. The basis of classification marks no such difference in circumstance between the two classes as to warrant the imposition as to the one and excuse it as to the other. Stewart Dry Goods Co. v. Lewis, supra; City of Danville v. Quaker Maid, Inc., 211 Ky. 677, 278 S.W. 98, 43 A.L.R. 590, and annotation at page 592; Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989; Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927.

What then is the effect of this invalidity? Does it strike down the act as a whole? Or may we, by virtue of the saving clause contained in the act, eliminate the language creating the exemption, employ what remains of the definition, and thus give effect to the act?

The saving clause is found as section 15 in both the 1933 and the 1934 acts. It provides in substance that the declared unconstitutionality of "any part, or parts, section, sub-section, sentence, clause or phrase" of the act shall not affect the remaining portions which, shall "remain standing" as if the act had been passed with the invalid portions eliminated, and further declares:

"It is hereby declared as a legislative act that it [the Legislature] would have adopted this Act if such unconstitutional part or parts, * * * had not been included herein."

We think the appropriate function of such a provision and the ultimate effect to which it is entitled are so well stated by the Supreme Court of the United States in Williams v. Standard Oil Co., 278 U. S. 235, 49 S.Ct. 115, 117, 73 L.Ed. 287, 60 A.L.R. 596, that we quote from its opinion as follows:

"Finally, it is said that even if the price-fixing provisions be held invalid other provisions of the act should be upheld as separate and distinct. This contention is emphasized by a reference to section 12 of the act, which declares: 'That if any section or provision of this act shall be held to be invalid this shall not affect the validity of other sections or provisions hereof.'

"In Hill v. Wallace, 259 U.S. 44, 71, 66 L.Ed. 822, 831, 42 S.Ct. 453, 459, it is said that such a legislative declaration serves to assure the courts that separate sections or provisions of a partly invalid act may be properly sustained 'without hesitation or doubt as to whether they would have been adopted, even if the Legislature had been advised of the invalidity of part.' But the general rule is that the unobjectionable part of a statute cannot be held separable unless it appears that, 'standing alone, legal effect can be given to it and that the Legislature intended the provision to stand, in case others included in the act and held bad should fall.' The question is one of interpretation and of legislative intent, and the legislative declaration 'provides a rule of construction which may sometimes aid in determining that intent. But it is an aid merely; not

an inexorable command.' Dorchy v. Kansas, 264 U.S. 286, 290, 68 L.Ed. 686, 689, 44 S.Ct. 323, 325.

"In the absence of such a legislative declaration, the presumption is that the Legislature intends an act to be effective as an entirety. This is well stated in Riccio v. Hoboken, 69 N.J.Law, 649, 662, 63 L. R.A. 485, 55 A. 1109, 1113, where the New Jersey Court of Errors and Appeals, in an opinion delivered by Judge Pitney (afterward a justice of this court), after setting forth the rule as above, said:

" 'In seeking the legislative intent, the presumption is against any mutilation of a statute, and the courts will resort to elimination only where an unconstitutional provision is interjected into a statute otherwise valid, and is so independent and separable that its removal will leave the constitutional features and purposes of the act substantially unaffected by the process.'

"Compare Illinois C. R. Co. v. McKendree, 203 U.S. 514, 528–530, 51 L.Ed. 298, 304, 305, 27 S.Ct. 153; Employers' Liability Cases [Howard v. Illinois C. R. Co.], 207 U.S. 463, 501, 52 L.Ed. 297, 310, 28 S.Ct. 141; Butts v. Merchants' & M. Transp. Co., 230 U.S. 126, 132, et seq., 57 L.Ed. 1422, 1424, 33 S.Ct. 964; and see 1 Cooley, Const.Lim. (8th Ed.) 362, 363, and note.

"The effect of the statutory declaration is to create in the place of the presumption just stated the opposite one of separability; that is to say, we begin, in the light of the declaration, with the presumption that the Legislature intended the act to be divisible, and this presumption must be overcome by considerations which make evident the inseparability of its provisions or the clear probability that the invalid part being eliminated the Legislature would not have been satisfied with what remains."

A comprehensive annotation on the effect of saving clauses similar to that contained in the act before us accompanies the report of the case just quoted from in 73 L.Ed. 287.

The limitation upon the power of the courts even with the aid of the saving clause is forcefully declared by the late Mr. Chief Justice Taft in Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 458, 66 L.Ed. 822, as follows:

"Section 11 of this act directs that—'If any provision of this act or the application thereof to any person or circumstances is held invalid, the validity of the remainder of the act and of the application of such provision to other persons and circumstances shall not be affected thereby.'

"Section 4 [7 U.S.C.A. § 1 note], with its penalty to secure compliance with the regulations of Boards of Trade is so interwoven with those regulations that they cannot be separated. None of them can stand. Section 11 did not intend the court to dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work beyond the power and function of the court."

State ex rel. Hickey v. Levitan, 190 Wis. 646, 210 N.W. 111, 119, 48 A.L.R. 434, presented the question now considered on analogous facts. The court said:

"The definition of a wholesale produce dealer as contained in the statute being void, the entire act becomes invalid. Furthermore, the exemption of local groups, above referred to, is such an interdependent and vital provision of the definition of a wholesale produce dealer as to vitiate the entire act, and to persuade us that it is unconstitutional as a whole.

"We are not unmindful of the provision of subsection (8) of section 99.32 of the Statutes, which provides that: 'the provisions of section 99.19 to 99.27, inclusive, * * * shall apply to the enforcement of this section and to all orders issued hereunder.'

"Subsection (3) of section 99.27 of the Statutes provides: 'The Legislature intends that the provisions contained in sections 99.01 to 99.30, inclusive, shall be independent of each other and that the invalidity, for any reason, of any provision shall not affect the validity of any other provision.'

"Such a provision as is contained in subsection (3) of section 99.27 of the Statutes must be given its intended effect wherever possible. However, the exemption as to local groups is a vital part of the statutory definition of a wholesale produce dealer."

In Felts v. Linton, 217 Ky. 305, 289 S. W. 312, 314, construing the effect of a similar saving clause, the court said:

"It is argued, however, that if the Legislature had no right to exempt from the operation of this budget act those counties having the commission form of government, then section 32 of the act, which brings about that exemption, should be held unconstitutional and void, but that the rest of the act should be upheld, particularly in view of section 29 thereof, which provides in substance that if any section, provision, paragraph, or clause of the act shall be declared unconstitutional, such invalidity shall not affect any of the remaining provisions of the act; it being the intention of the Legislature to enact each clause, paragraph, provision, and section of the act separately. The fallacy in this position, however lies in the assumption that it is section 32 of the act which is invalid, whereas that section is as valid as any other section of that act. It is its presence in the act which renders the act as a whole invalid."

The "and who sells" clause limiting application of the act to those selling in small packages or parcels and thereby operating to exempt those who do not is an inseparable and interdependent part of the definition of "retail dealer." For us to strike out this clause would be to accomplish a result which the Legislature painstakingly sought to avoid. Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct.

431, 46 L.Ed. 679. Indeed, the clause is not in itself invalid. It is merely that its presence renders the definition of "retail dealer" as a whole void. Felts v: Linton, supra. Of course, if the definition of "retail dealer" goes out, the whole act fails. There is nothing left upon which it can operate.

 If the "and who sells" clause carries the meaning we have attributed to it, which is its literal and only sensible meaning, it creates an arbitrary and capricious classification and is bad as denying equal protection of the laws. If it has not this meaning, if it was not designed to limit application of the act to a group otherwise embraced in the generality of so much of the definition as precedes its use, then we confess utter inability to determine its purpose. It either has the purpose we give it, or it is void for uncertainty. State v. Levitan, supra; State v. Skinner, 20 Ala.App. 204, 101 So. 327.

"When the language of an act appears on its face to have a meaning, but it is impossible to give it any precise or intelligible application in the circumstances under which it was intended to operate, it is simply void." 26 Am.& Eng. Encyc. 656.

We declare both acts invalid in their entirety. From this it follows the action of the trial court in permanently enjoining their enforcement was proper. Its judgment is therefore affirmed, thus adhering to the result we announced originally.

It is so ordered.

HUDSPETH, BICKLEY, BRICE, JJ., and LUIS E. ARMIJO, District Judge, concur.