Desmond, J.
This is a proceeding under article 78 of the Civil Practice Act. The Appellate Division, First Department, unanimously confirmed determinations of the Comptroller of *365 the City of New York which denied petitioner’s claim for refund, and assessed additional New York City “ Gross Receipts Taxes ” (Administrative Code of City of New York, ch. 41, tit. RR; ch. 46, tit. B), for the years 1947, 1948 and 1949. Petitioner appeals as of right on alleged constitutional grounds. These taxes were imposed on petitioner’s advertising receipts, on the theory that they were the fruits of an activity local to New York City.
Appellant publishes The New Yorher, a weekly magazine, in two separate editions. One is referred to as the “ city ” or “ metropolitan ” edition and is circulated in New York City and vicinity, while the other is called the ‘ ‘ national ”, “ out-of-town ” or “ star ” edition and circulates in upper New York State, throughout the United States and abroad. The city edition charges for advertising at rates lower than those charged for advertisement for the broader coverage. Both editions are identical except as to advertising matter. The city edition contains all of the advertisements contained in the national edition plus local additions. The circulation of The New Yorher in New York City is approximately 20% of its total circulation. The magazine is managed, edited and compiled in New York City, but is printed in Greenwich, Connecticut, under a contract with an independent printer there. Appellant owns no printing equipment. It stores at the printer’s premises in Connecticut a supply of the paper on which the magazine is printed. The completed magazine is mailed or shipped from Connecticut on directions from appellant’s New York circulation department which prepares the mailing wrappers in New York. Dummies of the magazine are made up in the New York office and sent to the printer. Every Monday, when the magazine goes to press, employees of appellant’s editorial department go to Connecticut for proofreading and last minute revision of the editorial matter. Last minute changes in advertising are handled by telephone from New York. A substantial part of appellant’s advertising comes from outside the State. Appellant has an advertising branch office in Chicago and advertising representatives elsewhere. Prepared cuts, mats and copy are sent to appellant by the advertisers or their advertising agencies. Advertising contracts are kept in the New York office and approval of advertising copy is given there. Bills for advertising are sent from the New York office *366 and payment is received at the New York office, except for advertising solicited by the Chicago office. Some of the editorial matter is prepared outside the State of New York by writers, authors and artists. The tax here involved was imposed on appellant’s total receipts from advertising less advertising receipts received from its Chicago branch office.
Appellant asserts that the tax is violative of the commerce clause of the Federal Constitution. To make the point, appellant attempts to distinguish this case from Western Live Stock v. Bureau of Revenue (303 U. S. 250). There the Supreme Court held valid a New Mexico “privilege tax ” on gross receipts from the sale of advertising. The periodical, prepared, edited and published within the State of New Mexico, sold advertising space to out-of-State advertisers and was circulated to subscribers within and without the State. Appellant, in its attempt to distinguish this case from Western Live Stock, lists the following fact differences between the cases, none of which offer a sound basis for such distinguishing. First, Western Live Stock arose on demurrer and here there was a trial; second, the difference in the amount of the two taxes; third, no allegation or proof in Western Live Stock that the magazine was in competition' with and performed the same function as other advertising media (radio and television) taxed on a more favorable basis (allocation by reason of interstate activity); fourth, in Western Live Stock no tax on circulation and no concession that the Western Live Stock circulation was in interstate commerce while here the tax on circulation receipts was on that part only derived from circulation in New York City, i.e., 20%; fifth, Western Live Stock’s circulation was by subscription only while a substantial part of The New Yorker’s interstate circulation consists of newsstand sales all over the country; sixth, advertising was “ one ” of Western Live Stock’s sources of revenue while here advertising produced 75% of revenues; seventh, the tax in Western Live Stock was expressly levied on receipts “ for the sale of advertising space ” while here neither the State Enabling Act nor the city Local Law expressly tax advertising receipts; and, lastly, Western Live Stock had one edition while The New Yorker has two editions, one circulated entirely outside New York City. Appellant urges, too, these further differences between the two cases: there was in Western Live Stock no proof as to circulation out *367 side New Mexico and no allegation or proof that it sold to its advertisers the service of delivering messages to readers throughout the country and abroad. However, in Western Live Stock, the Supreme Court assumed that appellant’s contracts required out-of-State circulation (303 U. S. 250, 254, supra). Appellant next points to one more difference between the fact patterns: that Western Live Stock was wholly prepared, printed, published and edited in New Mexico, wherein was its only office or place of business. In the present case appellant, as we have seen, had its printing done outside the State but it would seem that was merely a separable part of its total method of doing business. And the tax here is not on the printing of the magazine but on the New York sale of its advertising. The interstate activities found in the Western Live Stock situation were these: circulation in other States besides New Mexico, distribution being by mail and otherwise to paid subscribers ; advertising from other States obtained through solicitation out-of-State; payment for the advertising made by remittances sent interstate; interstate shipment by advertisers to the publisher of advertising cuts, mats, information and copy.
Appellant gives us other reasons for its contention that the holding in Western Live Stock v. Bureau of Revenue (303 U. S. 250, supra) is not applicable here. However, in the Western Live Stock case the Supreme Court held that “ the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce ’ ’; that ‘ ‘ So far as the advertising rates reflect a value attributable to the maintenance of a circulation of the magazine interstate, we think the burden on the interstate business is too remote and too attenuated to call for a rigidly logical application of the doctrine that gross receipts from interstate commerce may not be made the measure of a tax ” (303 U. S. 250, 258-259, supra). Justice Stone in that opinion noted as one reason for the court’s decision that a tax on the taxpayer’s activity could not be levied elsewhere than in New Mexico (303 U. S. 250, 260, supra).
The only real distinction between this case and the Western Live Stock case is this matter of printing. In the Western Live Stock case the printing and publishing was done in the taxing State. Here, the printing was done out-of-State. However, that was activity by an independent printer. The incidental *368 Connecticut duties of appellant’s employees in last minute proofreading and revision is of no more moment than, say, the out-of-State solicitation of advertising in the Western Live Stock case. Justice Stone had this to say in this connection: “ Experience has taught that the opposing demands that the commerce shall hear its share of local taxation, and that it shall not, on the other hand, be subjected to multiple tax burdens merely because it is interstate commerce, are not capable of reconciliation by resort to the syllogism. Practical rather than logical distinctions must be sought.” (303 U. S. 250, 259, supra.)
In Matter of McCall Corp. v. Joseph (284 App. Div. 484) the Appellate Division, First Department, held that there must be an allocation of receipts based on activities in New York City where New York City gross receipts taxes were levied on advertising revenue of McCall’s magazine which was printed in Ohio. However, in that case McCall printed the magazine at its own printing plant out-of-State. The same Appellate Division decided this case and its opinion in this case mentions this distinction.
Appellant insists that the New York State Enabling Act (G-eneral City Law, § 24-a) and the New York City Local Law allow a tax on local business only whereas appellant is engaged in a world-wide business and has been taxed on that nonlocal business. The comptroller, says appellant, exceeded his delegated authority by singling out for discriminatory treatment taxpayers situated like appellant while making allocations for tax purposes of receipts of certain manufacturers, merchants and radio and television broadcasters, and that the comptroller exceeded his authority in changing his regulations without a change in the law or the governing facts. But the alleged discriminatory treatment results from the comptroller’s determinations that certain manufacturers, merchants and broadcasters are actually engaged in interstate commerce. As to the charge that the comptroller exceeded his authority in changing his regulations: originally the regulations allowed appellant to allocate its advertising receipts from advertising in the same way it now allocates its receipts from circulation. After the Supreme Court’s decision in Western Live Stock v. Bureau of Revenue (303 U. S. 250, supra) the comptroller changed his regulations to provide for tax without allocation *369 on gross advertising receipts, and after the decision in Matter of McCall Corp. v. Joseph (284 App. Div. 484, supra) he again changed his regulations to meet the situation decided in that case. Since the comptroller has power to make regulations, he has power to make them in conformity with the law as decided in the courts.
As to the assertion that the tax is violative of the due process and equal protection clauses of the Federal and State Constitutions, this really is a charge of illegal delegation of legislative power to the comptroller. Appellant under this point urges that the tax as applied to the appellant seems to be based on some supposed grant by the State’s Enabling Act to the comptroller of authority to impose the maximum tax permissible under the Constitution, as the comptroller interprets the decisions of the Supreme Court. Appellant says this permits the comptroller to discriminate illegally between types of businesses and between taxpayers in the same type of business. Appellant’s main concern under this point is that some businesses have been held to be engaged in interstate commerce and entitled to allocation of receipts for the purposes of the gross receipts tax. Appellant is particularly concerned that radio and television broadcasters, who compete with appellant for advertising business, have been allowed to allocate advertising receipts for taxation purposes on the ground that their advertising activities were in interstate commerce. Appellant’s arguments as to equal protection and due process are based on the same proposition. The ready answer is that appellant’s advertising receipts result from local activity while radio and television broadcasting is interstate.
The order appealed from should be affirmed, with costs.
Conway, Ch. J., Dye, Fuld, Froessel and Van Voorhis, JJ., concur; Burke, J., taking no part.
Order affirmed.