330 P.2d 131

Edward EDMUNDS, Jr., d/b/a Edmunds Chemical Company, Plaintiff-Appellant,

v.

BUREAU OF REVENUE OF the State of NEW MEXICO; Tony Luna, Commissioner of Said Bureau; and Robert E. Prittchet, Director of the School Tax Division of said Bureau, Defendants-Appellees.

No. 6404.

Supreme Court of New Mexico.

Sept. 24, 1958.

Hannett, Hannett & Cornish, Albuquerque, for appellant.

Charles B. Barker, Santa Fe, for appellees.

SHILLINGLAW, Justice.

Appellant, a resident retailer of chemicals, sold certain chemical reagents for use in processing uranium ore to a large mill in Grants, New Mexico, and he came under the provisions of the Emergency School Tax Act, § 72–16–1 et seq., N.M.S.A.1953, which was enacted as chapter 73, Laws of 1935:

> 72–16–4: "There is hereby levied, and shall be collected by the Bureau of Revenue, privilege taxes, measured by the amount or volume of business done, against the persons, on account of their business activities, engaging or continuing, within the state of New Mexico, in any business as herein defined, and in the amounts determined by the application of rates against gross receipts, as follows:
>
> \* \* \* \* \* \*
>
> "D. At an amount equal to two (2) per cent of the gross receipts of the business of every person engaging or continuing in the business of selling at retail of goods, wares, materials, equipment, machinery, and commodities \* \* \*"

Appellant paid the required school tax, amounting to 2% on such sales, making these payments under protest.

It appeared that certain nonresident persons and corporations also sold chemical reagents to the uranium mill at Grants and such nonresident vendors do not come within the terms of the Emergency School Tax Act hereinabove quoted.

It might be explained at this point that, in the normal case of a sale of goods or products by a nonresident vendor to a resident purchaser, the provisions of § 72–17–3, N.M.S.A.1953, which was enacted as chapter 95, Laws of 1939, come into play as follows:

> "An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from a retailer on or after July 1, 1939, and stored, used or consumed in this state at the rate of two per cent [2%] of the sales price of such property; \* \* \*."

This is the New Mexico Compensating Tax Act of 1939, the purpose of which was declared by the legislature to be, in § 72–17–1, N.M.S.A.1953:

> " \* \* \* to protect, so far as is practicable the merchants, dealers and manufacturers of New Mexico who operate under the excise tax laws of this state, and who meet the requirements of such laws, against the unfair competitions of importations into New Mexico, without the payment of a sales tax, of goods, wares and merchandise."

However, the Compensating Tax Act makes some express exceptions, the rele-

vant exceptions being listed in § 72–17–4 (*l*), N.M.S.A.1953, as follows:

"All chemicals and reagents procured or purchased by any mining, milling or oil company for use or consumption in processing ores or oil in mill, smelter, or refinery, or in acidizing oil wells; * * *"

Thus a situation is presented where, in the case of the sale of chemical reagents, the appellant resident vendor is subjected to a 2% tax on his sales, his nonresident competitors are free of such taxation, and the 2% compensating tax does not apply to the purchaser of such products. Appellant claims that this situation, in effect, subjects the resident vendor to a 2% penalty for being a resident, or gives the nonresident vendor a 2% advantage for being a nonresident.

Having paid the 2% school tax on these sales under protest, appellant brings this action against the Bureau of Revenue for the recovery of such amounts paid, alleging that the 2% school tax, as applied to him on sales of chemical reagents to the uranium mill, is an unconstitutional denial of equal protection of the laws and of due process of law under both the state and federal constitutions.

There being no question raised as to the validity of the Emergency School Tax Act itself, the only question in this case is whether this act, under either the 14th Amendment to the Constitution of the United States or under Art. II, § 18 of the Constitution of the State of New Mexico, is unconstitutional *as applied to this appellant under the circumstances described.*

Arguing against appellant's position, counsel for the Bureau of Revenue submits that appellant can succeed in this action only if the 1939 Compensating Tax Act operated as a repeal by implication, in whole or in part, of the 1935 Emergency School Tax Act. Counsel concedes for the sake of argument that the above quoted exemptions under the Compensating Tax Act in the cases of sales of chemical reagents are unconstitutional as being "directly contrary to the declared purpose of the legislature in enacting the Compensating Tax law" but argues that a declaration by this court of the unconstitutionality of these exemptions could not benefit appellant so as to entitle him to recover "school tax regularly and legally assessed and paid."

First let us state that we know of no decision in this jurisdiction or elsewhere which declares an act of a legislature to be invalid as a violation of the declared policy of that very same legislature, as is argued by counsel for the Bureau. Secondly we admit that a declaration of the invalidity of the exemptions under the Compensating

Tax Act as listed in § 72–17–4(l), N.M.S. A.1953, could not enable appellant to recover the school tax paid under protest. But such is not the appellant's case.

In his complaint and in his arguments, both in the court below and on this appeal, appellant has contended that, in view of the 2% advantage given nonresident vendors of chemical reagents by the Compensating Tax Act, the collection of the 2% school tax was an unconstitutional denial of equal protection and due process *as applied to him on similar sales* of chemical reagents.

Appellant cites State v. Martinez, 48 N. M. 232, 149 P.2d 124, 126, 155 A.L.R. 811, not a case which involved a taxing problem but one in which we passed upon the question of discrimination against residents under an act providing that it was unlawful for any *resident* to bring into the state more than one pint of alcoholic liquor within any thirty-day period. Noting that this statute did not contain a similar prohibition against the importation of alcoholic liquor by nonresidents, we held it to be in violation of Art. II, § 18 of our constitution as a denial of equal protection:

"It does not curtail the consumption of liquor within the state, or affect the morals and welfare of its citizens. It practically confines the residents and citizens to purchasing in the local market, whereby they must pay local taxes, while non-residents and non-citizens are exempt from both."

Without any basis under the state's police powers, the single statute involved was in clear violation of the equal protection clause by permitting nonresidents to import liquor while denying the same privilege to residents. It should be noted that this was a single statute purporting to cover both classes of persons.

Another case which appellant attempts to compare with the instant case is State v. Hoyt, 71 Vt. 59, 42 A. 973, 974, in which the defendant was indicted for peddling without a license in violation of a statute requiring payment of a license fee for the sale within the state of goods manufactured in the state. The Vermont court remarked:

"It can hardly be supposed that the intention was to discriminate against the manufactures of this state, and yet that is the effect of the statute.  *  *"

And the court continued:

"Thus it appears that *the statute imposes a tax upon the goods themselves,* when peddled. This being so, we have said that it discriminates against the manufactures of this state; and that is true.  *  *  * Such discrimination impairs that equal right that all can claim in the enforcement

458

of the law. Soon Hing v. Crowley, 113 U.S. 703, 709, 5 S.Ct. 730 [28 L. Ed. 1145]. The question therefore is one of classification. *If * * * the resident and the nonresident manufacturer, or their goods, can be differently classed, the statute can be sustained;* otherwise not. The rule on the subject is that the mere fact of classification is not enough to exempt a statute from the operation of the equality clause of said [14th] amendment, but that in all cases it must appear, not only that a classification has been made, but that it is one based on some reasonable ground, some difference that bears a just and proper relation to the attempted classification, and is not a mere arbitrary selection. Gulf, C. & S. F. Railroad Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255. [41 L.Ed. 666]. Under the rule it seems impossible to make a classification here, for want of a sufficient ground on which to base it." [Emphasis ours.]

It will be noted that in the Vermont case the tax was imposed upon the *goods* themselves and, as a property tax, it discriminated against the goods produced by resident manufacturers, whereas in the instant case there are two statutes imposing excise taxes upon two separate and distinct classifications of *persons.*

Our school tax is imposed only upon *vendors* and is a valid requirement imposed for the privilege of doing business in the state, in return for the state's protection of the *vendor.* The compensating tax, on the other hand, applies only to *purchasers,* is imposed upon the "storage, use or other consumption in this state of * * * tangible personal property," and is exacted as compensation for the state's protection of the *purchaser.*

██ It is for the legislature to adopt such classifications for the imposition of excise taxes as it may deem proper and any reasonable classification cannot be held to deny equal protection or due process. Our legislature's selection of the vendor for imposition of the school tax and of the purchaser for imposition of the compensating tax is reasonable in view of the impossibility of subjecting the nonresident vendor—one who is out of the territorial jurisdiction of the legislature—to the school tax.

█ Does the failure of the legislature "to protect" the appellant "against the unfair competitions of importations into New Mexico, without the payment of a sales tax," of chemical reagents, offend the constitutions of either the United States or of New Mexico so as to invalidate the school tax against him? We think not. We stated in Asplund v. Alarid, 29 N.M. 129, 219 P. 786, that:

"The power of taxation is inherent in the state, and may generally be

exercised in the discretion of the Legislature, except in so far as limited by the Constitution, and the state likewise has the reciprocal power of exempting from taxation, except as limited by the Constitution * * *."

And we further stated in Lougee v. New Mexico Bureau of Revenue Commissioner, 42 N.M. 115, 134, 76 P.2d 6, 17:

"In the exercise of the power of taxation the state is free to select its subjects, and also to grant exemptions. There is no rule under any provision of the Constitution of the state or national government that requires a precise equality in taxation. Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S.Ct. 868, 873, 81 L.Ed. 1245, 109 A.L.R. 1327."

Appellant's remedy for any inequities which may exist as to him by reason of exemptions appearing in the Compensating Tax Act lies not before this court but with the legislature.

Not finding that the school tax is unconstitutional as applied to the appellant, the order of the lower court dismissing the appellant's complaint is affirmed.

It Is So Ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.