483 P.2d 317

**NEW MEXICO NEWSPAPERS, INC., a
New Mexico corporation, Appellant,**

**v.**

**BUREAU OF REVENUE, State of New Mex-
ico and Franklin Jones, Commissioner
of Revenue, Appellees.**

**No. 516.**

Court of Appeals of New Mexico.

March 5, 1971.

Jeff Bingaman, Stephenson, Campbell & Olmsted, Santa Fe, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Mark B. Thompson III, Asst. Atty. Gen., for appellees.

## OPINION

SPIESS, Chief Judge.

This appeal challenges an administrative decision and order of the Commissioner of Revenue assessing gross receipts tax [§§ 72–16A–1 through 72–16A–19, N.M.S.A. 1953 (Rpl. Vol. 10, pt. 2) (Supp. 1969)], against certain receipts of appellant-taxpayer which are derived from out-of-state advertising published in its newspaper.

Taxpayer bases its contention of non-taxability upon two alternative grounds:

I.    The receipts in question are immune because taxation of them would be violative of the Commerce Clause of the United States Constitution.

II.    Application of the tax to these receipts would be violative of the equal protection provisions of both state and federal Constitutions, as broadcasters similarly situated are tax exempt.

We affirm the decision and order of the Commissioner.

I.

## VIOLATION OF COMMERCE CLAUSE

Stipulated facts relevant to taxpayer's first argument are:

(1) Taxpayer is a New Mexico corporation engaged in the publication of a newspaper in Farmington, New Mexico.

(2) Taxpayer maintains no office or other place of business outside New Mexico.

(3) Part of taxpayer's income is derived from printing advertisements which are part of national advertising campaigns by foreign marketers of goods and services.

(4) Taxpayer's receipts from advertisements as in (3) are received pursuant to contracts made outside New Mexico, between advertisers and solicitation representatives of taxpayer, neither of which are engaged in business in New Mexico.

(5) Receipts in (3) are for printing and publication only. All preparation of mats is done outside New Mexico by the advertising agency.

(6) Taxpayer receives payment in the following manner:

(a) Taxpayer prints the advertisement.

(b) Taxpayer presents a bill and proof of printing to Representative.

(c) Representative presents same to Agency.

(d) Agency presents bill to Advertiser, who pays Agency.

(e) Agency remits to Representative, retaining a percentage for its services.

(f) Representative remits to Taxpayer, retaining a percentage for its services. Thus, Taxpayer receives less than face value of its original bill.

Both parties to this appeal rely on Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1939), affirming Western Live Stock v. Bureau of Revenue, 41 N.M. 288, 67 P.2d 505 (1937). There are three cases bearing the name "Western Live Stock v. Bureau of Revenue." (1) that found at 41 N.M. 141, 65 P.2d 863 (1937), hereinafter referred to

as *"Western I"*, (2) that found at 41 N.M. 288, 67 P.2d 505 (1937), hereinafter referred to as *"Western II"*, (3) that found at 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1939), hereinafter referred to as *"Western III."*

The facts upon which the Western Cases were based are:

"Appellants publish a monthly livestock trade journal which they wholly prepare, edit, and publish within the state of New Mexico, where their only office and place of business is located. The journal has a circulation in New Mexico and other states, being distributed to paid subscribers through the mails or by other means of transportation. It carries advertisements, some of which are obtained from advertisers in other states through appellants' solicitation there. Where such contracts are entered into, payment is made by remittance to appellants sent interstate; and the contracts contemplate and provide for the interstate shipment by the advertisers to appellants of advertising cuts, mats, information, and copy. Payment is due after the printing of such advertisements in the journal and its ultimate circulation and distribution, which is alleged to be in New Mexico and other states." *"Western III,"* 303 U.S. at 252, 58 S.Ct. at 547.

It further appears that the transactions before the court involved representation by foreign advertising agencies.

" * * * These foreign advertisements are obtained by plaintiff both through personal solicitation and through what are known as advertising agencies, located in states other than New Mexico. Some of these advertising contracts are made between plaintiffs and the manufacturer, located in a foreign state, while others, as stated, are made between the plaintiffs and an advertising agency, which advertising agency having a different and a separate contract with the manufacturer, and in such cases all dealings in connection therewith are between

the plaintiffs and the agency." *Western I*, 41 N.M. at 143, 65 P.2d at 865.

A. Is the tax in question violative of the Commerce Clause as an undue burden on interstate commerce? No.

It appears to us that each of the elements involved here was a subject of consideration by the Supreme Court of the United States in *Western III* and it was there held that tax was "not forbidden."

"That the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, unless the performance is within its protection, is a proposition no longer open to question. [citations omitted]. Hence, it is unnecessary to consider the impact of the tax upon the advertising contracts except as it affects their performance, presently to be discussed. Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business. [citations omitted]. Here the tax which is laid on the compensation received under the contract is not forbidden either because the contract, apart from its performance, is within the protection of the commerce clause, or because as an incident preliminary to printing and publishing the advertisements the advertisers send cuts, copy and the like to appellants." "Western III," 303 U.S. at 253, 58 S.Ct. at 547.

B. Is the tax forbidden because of the possibility of multiple taxation?

In *Western III*, the court considered multiple taxation with reference to the magazines' activities as a whole, including interstate distribution, and said:

" * * * The vice characteristic of those which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable, in

point of substance, of being imposed [citations omitted] or added to [citations omitted] with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce [citations omitted]. The multiplication of state taxes measured by the gross receipts from interstate transactions would spell the destruction of interstate commerce and renew the barriers to interstate trade which is the object of the commerce clause to remove." [citations omitted].

It is upon the basis of multiple taxation that taxpayer seeks to establish its claim of immunity from the taxation. The taxpayer argues that the possibility of multiple taxation which the Commerce Clause is intended to prohibit is present in the instant case in at least three distinct ways.

(First), since it is stipulated that the contracts between taxpayer and the national advertising agencies are made outside New Mexico, the state where the contracts are made could well impose a tax upon the receipts due under the contract.

(Second), the state where the advertiser lives could impose a tax upon the purchaser of the service for the amount of that service.

(Third), the state where the advertising agency resides could impose a tax upon the entire amount of the statement paid by the advertiser to the advertising agency, although the advertising agency retains only a percentage of the amount of the statement.

If compensation received under the contracts is not protected by the Commerce Clause, then, in our view, multiple taxation of these receipts would not bring them within such protection.

■ Should multiple taxation under these circumstances be treated as invoking protection of the Commerce Clause, the taxpayer, nevertheless, would have the burden of establishing his right to immunity from taxation. Norton Company v. Department of Revenue, 340 U.S. 534, 71 S. Ct. 377, 95 L.Ed. 517 (1951). Taxpayer has not shown that states other than New Mexico impose a tax upon any of the contracts or receipts which relate to, or are derived from, the sale of advertising space in taxpayer's newspaper. Taxpayer, as we have shown, contends only that a possibility of multiple taxation is present. In Northwestern States Portland Cement Company v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292 (1959), the Supreme Court, in considering a net income tax as applied to receipts from interstate commerce, said, "While the economic wisdom of state net income taxes is one of state policy not for our decision, one of the 'realities' raised by the parties is the possibility of a multiple burden resulting from the exactions in question. The answer is that none is shown to exist here." 358 U.S. at 462, 79 S.Ct. at 364. Further, with respect to taxpayer's multiple tax contention, the court said:

"There is nothing to show that multiple taxation is present. We cannot deal in abstractions. In this type of case the taxpayers must show that the formula places a burden upon interstate commerce in a constitutional sense." 358 U.S. at 463, 79 S.Ct. at 365.

There is no basis shown upon which multiple taxation can be considered, if it be applicable. See General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430, 439 (1964).

■ Further, in view of taxpayer's in-state activities, as has been shown, we do not consider the tax upon the receipts involved to be violative of the commerce clause if taxpayer's activity be treated as falling within the Commerce Clause. In General Motors Corp. v. Washington, *supra,* the court, in considering a tax measured by gross receipts, said:

" * * * [I]t is well established that taxation measured by gross receipts is

constitutionally proper if it is fairly apportioned.

"A careful analysis of the cases in this field teaches that the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for the aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. * * * '[t]he simple but controlling question is whether the state has given anything for which it can ask return.'" 377 U.S. at 440, 84 S.Ct. at 1568.

Lee Enterprises, Inc., v. Iowa State Tax Commission, 162 N.W.2d 730 (Iowa 1968). The following statement in Evco v. Jones, 81 N.M. 724, 472 P.2d 987 (Ct.App.1970), we think is relevant to a consideration of the question presented here.

"* * * the taxpayer is a New Mexico corporation with its principal office in New Mexico, and the actual performance of all work in the production of the property provided for by the contracts here in question was accomplished within New Mexico. These in-state incidents are clearly sufficient as a basis for the levy by New Mexico of a gross receipts tax without doing violence to the interstate commerce clause of the federal constitution. * * *" 81 N.M. at 731, 472 P.2d at 994.

## II.

## VIOLATION OF EQUAL PROTECTION PROVISIONS OF STATE AND FEDERAL CONSTITUTION.

"The equal protection clauses of the United States and New Mexico Constitutions require that taxpayer be granted the same exemption from taxation for receipts derived from the sale of advertising space to advertiser not engaged in business in New Mexico as the radio and television broadcasters in the state are presently granted."

■ By reference to the stipulation of facts, taxpayer says that it derives its income partly from advertisements placed by advertisers not engaged in business in New Mexico. Radio and television broadcasters in New Mexico likewise derive their income partly from broadcasting programs supplied to them by national network broadcasting companies from outside New Mexico, under circumstances where the advertising sponsor is not engaged in business in New Mexico, and also from spot advertising programs supplied to the stations by advertisers and their agencies located outside the state. The Commissioner imposes gross receipts tax on taxpayer upon these receipts but does not impose such tax on the particular receipts of radio and television broadcasters.

Taxpayer argues that it and the radio and television broadcasters of the state are similarly situated in all respects pertinent to their tax liability, and are in direct competition with each other. Upon this basis, taxpayer contends that imposition of the tax upon its receipts, while the receipts of radio and television broadcasters are not taxed, constitutes arbitrary and discriminatory treatment or classification of the taxpayer in violation of the equal protection clauses of the state and Federal Constitutions. The taxpayer claims no discriminatory classification in the language of the statute. The discrimination claimed and violation of the equal protection clauses according to it rests in the interpretation and enforcement of the law by the Commissioner.

Section 72–16A–14.10, N.M.S.A.1953 (Pt. 2, Supp.1969) provides, in part:

"Receipts from transactions in interstate commerce may be deducted from gross receipts to the extent that the imposition of the gross receipts tax would be unlawful under the United States Constitution."

The Supreme Court in Albuquerque Broadcasting Company v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416 (1947) held, with respect to programs and national spot advertising supplied by out of state broadcasting companies and advertisers, as follows:

"These programs are thus broadcast over sixteen states and parts of Canada and Mexico. They are communications directed to all persons listening to the broadcasts wherever they may be. This business is strictly interstate and we can discover no incident in connection therewith that could be classed as a 'taxable event.' The idea that there are means by which the state can lay a tax on these activities so that appellant will be required to pay 'its just share of state taxation' in return for the protection it receives, is either a delusion, or else we are unable to discover the means through which it may be required to respond, in view of Freeman v. Hewit, [329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946)]. We are of the opinion that the tax so laid and collected on the gross receipts from these broadcasts must be returned to appellant." 51 N.M. at 354, 184 P.2d at 430.

Taxpayer concedes that it is not entitled to question, and it does not question, the propriety of the exemption or immunity enjoyed by radio and television broadcasters. Consequently, for purposes of this review, we accept as correct the proposition that the receipts so derived by radio and television stations are not amenable to taxation by the state under the Commerce Clause.

It is our opinion that the Commissioner in granting the deductions to radio and television stations and denying a like deduction to newspapers was complying or undertaking to comply with the statute (§ 72–16A–14.10, supra) in relation to the classification inherent in the statute as a whole.

It is basic that there must be equality and uniformity in the levy of taxes. In Maloof & Co. v. Bureau of Revenue, 80 N.M. 485, 458 P.2d 89 (1969) the court commented as follows:

"In the field of taxation, more than in other fields, the legislature possesses the greatest freedom in classification, and to attack such a violation of the Fourteenth Amendment places the burden on the one attacking to negative every conceivable basis which might support the classification. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

"Unless the classification is clearly arbitrary and capricious or void for uncertainty, as in Safeway Stores v. Vigil, [40 N.M. 190, 57 P.2d 287 (1936)] supra, we cannot substitute our views in selecting and classifying for those of the legislature. Romero v. Tilton, 78 N.M. 696, 437 P.2d 157 (Ct.App.1967), cert. denied January 31, 1968. * * *"

See also Edmunds v. Bureau of Revenue, 64 N.M. 454, 330 P.2d 131 (1958). The Supreme Court of Iowa said:

"If there is any reasonable ground for the classification in a particular act, and it operates uniformly and equally upon all within the same class, this is uniformity in the constitutional sense. [citations omitted]. This is particularly true as to excise acts. Substantial equality and uniformity are all the law requires with reference to either a statute imposing an excise tax or an administrative rule with reference to such tax." [citations omitted].

Lee Enterprises, Inc. v. Iowa State Tax Commission, *supra*.

Granting a deduction, whether in accordance with statute or administrative regulations, of gross receipts which are not taxable by the state under the Commerce Clause, and denying such deduction, with respect to receipts which are subject to state taxation, although the receipts in each instance are produced by comparable activities, is a reasonable and proper basis for classification; it is not clearly arbitrary and capricious, or void for uncertainty. See New Yorker Magazine, Inc. v.

Gerosa, 3 N.Y.2d 362, 165 N.Y.S.2d 469, 144 N.E.2d 367 (1957).

If inequities are occasioned taxpayer which result from classification its remedy is with the Legislature. Edmunds v. Bureau of Revenue, *supra*.

In view of the conclusions we have reached, the decision and order of the Bureau of Revenue is affirmed.

It is so ordered.

HENDLEY, J., specially concurs.

PAUL F. LARRAZOLO, District Judge, concurs.

HENDLEY, Judge (specially concurring).

I concur in the result reached by the majority but I do not agree with the reasoning used to reach that result. I will not belabor the authorities as they have been cited in the majority opinion.

We could reach a thoroughly consistent and valid result by following the principles enunciated in General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430, 439 (1964) and our local cases. Once a "taxable event" or "local incidents" has been established, the Commissioner could enforce a tax based on gross receipts unless the tax results in either discrimination against or multiple taxation on interstate commerce. Bell Telephone Laboratories, Inc. v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966); Evco v. Jones, 81 N.M. 724, 472 P.2d 987 (Ct.App.1970); Spillers v. Commissioner of Revenue, 82 N.M. 41, 475 P.2d 41 (Ct.App.1970).