LEE ENTERPRISES, INCORPORATED; WOC Broadcasting Company; American Broadcasting Stations, Inc.; WMT–TV, Inc.; KTIV Television Co.; Perkins Brothers Co.; Petersen-Harned-Von Maur, Inc.; Lujack Schierbrock Chevrolet Co.; Bawden Bros., Inc.; and Creswell Munsell Schubert & Zirbell, Inc.; Appellees,

v.

IOWA STATE TAX COMMISSION; E. A. Burrows, Jr.; Lynn Potter and X. T. Prentis, Members of the Iowa State Tax Commission; and Melvin H. Kramer and Raymond L. Larson, Representatives of the Iowa State Tax Commission; Department of Revenue of the State of Iowa, William J. Forst, Director of the Department of Revenue of the State of Iowa, and Gene M. Ford, A. H. Hinkle and George W. Welny, Members of the State Board of Tax Review, Appellants.

No. 53132.

Supreme Court of Iowa.

Nov. 12, 1968.

Rehearing Denied Jan. 13, 1969.

George W. Murray, Special Asst. Atty. Gen., Harry M. Griger, Asst. Atty. Gen., and Herrick, Langdon, Belin & Harris, Des Moines, for appellants.

Lane & Waterman, Davenport, and Shuttleworth & Ingersoll, Cedar Rapids, for appellees.

LARSON, Justice.

This is a suit in equity brought by plaintiffs-appellees, who are also cross-appel-

lants, for declaratory judgment and injunctive relief. As affected taxpayers, they challenged the constitutionality of the service tax portions of Division VII of an Act known as House File 702 enacted by the Sixty-second General Assembly, especially Section 25 thereof which relates to advertising services.

Defendants-appellants are the members of the State Tax Commission and specified local enforcement agents. The Tax Commission was abolished on December 31, 1967, and its successor, the Department of Revenue, and its director, and members of the State Board of Tax Review, were joined as additional parties.

Plaintiffs are corporations, the collective activities of which include the publication and circulation of newspapers, the operation of radio and/or television stations, the conduct of retail merchandising and automobile businesses which purchase newspaper, radio and television advertising, and the operation of advertising agencies which prepare and place advertising in newspaper, radio and television media.

In their pleadings, consisting of eight divisions and some twenty pages of the record, plaintiffs allege that the provisions of H.F. 702 relating to "a service tax upon advertising in certain media, specifically including newspapers, radio and television" are "unconstitutional and invalid for the reasons hereinafter set forth." In substance, they allege: (a) H.F. 702 violates the title requirements of Section 29 of Article III of the Iowa Constitution. (b) Division VII delegates legislative powers to the State Tax Commission in violation of Section 1 of Article III of the Iowa Constitution. (c) Division VII violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, the Due Process Clause of Section 9 of Article I of the Iowa Constitution, and the tax specificity requirement of Section 7 of Article VII of the Iowa Constitution, because it is vague, ambiguous, unworkable and incapable of enforcement. (d) Division VII violates "the interstate commerce immunity protected by the Commerce Clause of the Constitution of the United States, which insulates the press, radio and television against direct taxation of their advertising revenues derived from interstate commerce." (e) Division VII is discriminatory, denies to certain taxpayers equal protection of the laws and lacks uniform application in violation of the Fourteenth Amendment to the Constitution of the United States and Section 6 of Article I of the Iowa Constitution. (f) Division VII abridges the freedom of the press, radio and television guaranteed by the First Amendment to the Constitution of the United States and Section 7 of Article I of the Iowa Constitution.

Defendants denied the foregoing contentions and challenged the petition on the ground that the plaintiffs had no standing to challenge the constitutionality of a legislative enactment.

On December 11, 1967, the case was heard in the Scott County District Court, and on February 2, 1968, the court entered its findings of fact, conclusions of law, and judgment entry.

The trial court held (1) the plaintiffs had standing to challenge only that portion of the Act that directly affected them; (2) the title to the Act was sufficient; (3) the Act does not abridge freedom of the press or freedom of speech; (4) the portion of the Act that imposes a sales service tax on advertising media, including newspapers, radio and television, is unconstitutional in that (a) it is vague, general and indefinite; (b) it delegates absolute, unregulated and undefined discretion, as well as arbitrary and discriminatory power to the Commission; (c) it is burdensome upon and discriminates against interstate commerce; (d) it provides no reasonable relationship between the classification adopted by the legislature and the purposes of the Act.

Accordingly, the court entered judgment permanently enjoining the defendants from enforcing or attempting to enforce the advertising portions of the Act.

Defendants filed notice of appeal, and plaintiffs filed notice of cross-appeal challenging the holdings of the court adverse to them.

From the record it appears the Sixty-second General Assembly enacted what was referred to as House File 702, now Chapter 348 of the Laws of that session. Division VII of this Act amended Chapters 422 and 423, Code of 1966, to increase the rate of sales and use tax from two percent (2%) to three percent (3%) and to include as taxable the gross receipts from certain services which had not previously been listed or enumerated in the statute. Included among these services were: "* * * newspaper, directories, shopper's guides and newspapers whether or not circulated free or without charge to the public, magazine, radio, movie, and television advertising, to include such advertisement and service rendered, furnished, or performed by the state of Iowa, its boards and commissions or any installation thereof; outdoor and point-of-purchase performance advertising; * * * printing and binding; promotion and direct mail; * * *." Chapter 348, Division VII, Section 25, Laws of the Sixty-second General Assembly.

During the course of the trial plaintiffs offered testimony of four legislators who testified as to the inadequate consideration given to the Act by the legislature. Defendants properly objected to this evidence because it appears there was no claim that H.F. 702 was not properly and legally enacted, nor that there were any legal deficiencies in its enactment. See Carlton v. Grimes, 237 Iowa 912, 23 N.W.2d 883 (1946).

Henry B. Hook, publisher of the Times Democrat in Davenport, Iowa, testified that his newspaper publishes a Sunday, a morning, and an evening edition. He stated the average circulation of the Sunday edition was 49,191 in Iowa and 27,674 in Illinois and other states. The daily editions were circulated to 48,226 persons in Iowa and to 12,061 persons in Illinois and other states. As to revenues from advertising resulting from this circulation, he stated the total in 1966 was $4,385,271, that of that figure $2,345,000 was nonclassified advertising aimed primarily at the multistate Quad-City market, and $350,000 of nonclassified advertising was aimed primarily at the intrastate or Davenport market area. Of the classified ads $1,096,964 was received from advertisers aiming at the multistate market, $55,817 was received from legal notices, and $537,490 from national advertisers. He further stated advertising rates in his newspaper were substantially higher than those of other newspapers in the area because it was the only newspaper that had a multistate coverage.

W. D. Wagner, vice-president and secretary of WOC Broadcasting Company, Davenport, Iowa, testified that WOC is engaged in television and radio broadcasting in a multistate area, including Iowa, Illinois and Wisconsin, and it accepts and broadcasts advertising in connection with its broadcasting operations. It is also affiliated with a national network, National Broadcasting Company, or NBC. The programs that NBC furnishes WOC originate outside Iowa and are received via cable furnished by American Telephone and Telegraph Company, or AT & T. He further testified that WOC has one advertising rate for television and one rate for radio, that these rates are on a national basis, and that WOC has no separate rate for local advertisers. He further stated the market area served by WOC radio and television is measured by certain geographical contours, which were introduced as exhibits herein.

Kenneth Hastie, vice-president and manager of American Broadcasting Stations, Inc. at Cedar Rapids, Iowa, testified that WMT radio at Cedar Rapids and KWMT radio at Fort Dodge, Iowa, have contracts with a national advertising agency, and further that WMT is affiliated with Columbia Broadcasting Company, or CBS, and receives network programs via AT & T cables.

Lew Van Nostrand, vice-president of WMT–TV, Inc., testified that the income of WMT–TV was solely derived from advertising, that WMT–TV is affiliated with CBS, and that its national network business is furnished by CBS. The network programs are transmitted into Iowa via cable and microwave furnished by AT & T. In the year 1966 national advertisers accounted for 83% of the total revenues received by WMT–TV. He also testified that the market area served by WMT–TV is determined by certain geographical contours, which he described.

Dietrich Dirks, president of KTIV–TV in Sioux City, Iowa, testified that the market area served by his television station is multistate in character, measured by certain geographical contours, which he also described.

E. T. Flaherty, general manager of Perkins Brothers Co., which operates radio station KSCJ in Sioux City, Iowa, testified that his station accepts and broadcasts programs and advertising. The market area for this advertising is illustrated by certain geographical contours, also introduced into evidence.

William Youngstrom, controller of Petersen-Harned-Von Maur, Inc., testified that Petersen's is comprised of two department stores in Davenport, Iowa, and Moline, Illinois. It accepts orders from and makes deliveries to customers in both Iowa and Illinois, and it promotes the sale of its merchandise through advertising in newspaper, radio and television media in Iowa and Illinois. It spent in the last fiscal year $245,000 for advertising, of which 75% was spent on newspaper, radio and television advertising in media located in Davenport, Iowa. He further testified, whether the advertising media is located in Davenport, Rock Island, or Moline, the advertising of Petersen's is designed to reach customers and prospective customers in east-central Iowa and west-central Illinois. He also testified to the volume of sales of merchandise to the respective states.

John C. Lujack, vice-president of Lujack Schierbrock Chevrolet Co., testified that his company sells cars and trucks from its offices in Davenport, Iowa, to Iowa and Illinois residents. He further testified that during the past year he has spent $17,400 for advertising in the Times-Democrat newspaper in Davenport, $10,000 for radio advertising with WOC of Davenport, $4,400 for advertising in Illinois newspapers, and $10,700 for Illinois radio advertising, all of which was directed to the entire Quad-City market.

George R. Bawden, Jr., president of Bawden Bros., Inc., an advertising agency with its office in Davenport, Iowa, testified that his company accepts and prepares advertising material from local, regional, and national business firms, and places advertising material on behalf of its clientele in the newspaper, radio and television media in Iowa and Illinois. He stated his business revenues are derived from commissions, usually 15%, for the preparation and placing of ads. He further testified that his firm, in placing an ad, attempts to reach the effective market area that the various advertising media serve and that this area is usually determined by geographic contours in the case of radio and television and circulation in the case of newspapers. He acknowledged that there are television stations in Iowa which have their market area located entirely within the state of Iowa, that there are radio stations which have their effective market area within the state of Iowa, that there are newspapers, some dailies and substantially all of the weeklies, which have their effective market area within the state of Iowa, and that he takes these facts into consideration when placing ads. He also stated in his business he does not talk in terms of counties or state lines but in terms of market areas. The placement of advertising in the various media is done with that media's effective market area in mind.

E. W. Munsell, executive vice-president of Creswell Munsell Schubert & Zirbell,

Inc., an advertising agency in Cedar Rapids, Iowa, testified substantially as did George W. Bawden.

George Hixenbaugh, chief engineer of the WMT stations, testified at great length about the mechanical aspects of radio and television broadcasting. He admitted the sounds carried on electrical impulses fade with distance and are effective only when they may be utilized through consistent reception and sufficient amplification.

Earl A. Burrows, Jr., then chairman of the Iowa State Tax Commission, was examined at great length on the rules considered and adopted by the commission. The examination related largely to the formation of rules and to proposed rules concerning some twenty or more services other than advertising.

I. The trial court found the title to H. F. 702, which states: "An Act for the modification of existing sales and use taxes, and taxes on personal income and corporate income; to provide for property tax replacement, and allied purposes," clearly expresses the subject matter of the Act and is adequate. We agree.

Cross-appellants contend this title violates Section 29 of Article III of the Iowa Constitution, which states: "Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." This Act, they admit, does modify the existing sales and use taxes statute, but claim it also establishes new taxes on other services as indicated in Section 25 of the Act. They argue these added services are not germane to the existing sales and use taxes and, without redefining these taxes, new and additional taxes upon a new taxpaying class cannot be enacted without adequate notice to legislators or the general public as contemplated by the constitution. They rely upon our pronouncements in

State v. Bristow, 131 Iowa 664, 109 N.W. 199 (1906); State v. Manhattan Oil Co., 199 Iowa 1213, 203 N.W. 301 (1925); In re Breen, 207 Iowa 65, 222 N.W. 426 (1928); Rex Lumber Co. v. Reed, 107 Iowa 111, 77 N.W. 572; Kistner v. Iowa State Board of Assessment and Review, 225 Iowa 404, 280 N.W. 587 (1938); and other authorities to sustain their proposition that the standards set by the constitution were not met, that Division VII of H.F. 702 should be held invalid and the entire service tax section held unconstitutional. We do not find them applicable here.

In State v. Bristow, supra, an existing act pertaining to the vocation of peddlers was repealed and the title to the substituted act was held inadequate when it made no reference to an added class in the act designated as traveling solicitors.

In State v. Manhattan Oil Co., supra, the court held that an act captioned by a title that specifically designated the supervision and regulation of certain transportation "for hire" would not validly support a provision regulating transportation by the owner.

In In re Breen, supra, the court held a provision for the suspension of the license of a physician because of a conviction of a violation of the federal statutes relating to narcotics cannot be validly enacted under a title which professes "to amend, revise, and codify" certain statutes "relating to the sale and transportation of intoxicating liquors under permits." This case also holds a specifically-limited title will not support a subject not germane thereto.

In Rex Lumber Co. v. Reed, supra, the court declared invalid an amendment with a broadly-worded title that purported to aid public officials in the collection of taxes when the purpose of the existing statute was only to set a date for the attachment of a lien for taxes as between the vendor and vendee. Although this case appears to support cross-appellants' position, its au-

thority is doubtful in view of our more recent decisions.

In Kistner v. Iowa State Board of Assessment and Review, supra, the court held a funeral director is a "retailer" when he furnishes personal property in connection with his services, and a sales tax must be paid thereon upon the transfer of title to that property. It appears there were no taxes on services at that time and no attempt was made to include them under that statute.

■ At the outset we must recognize the presumption of constitutionality of this statute. The rule is well settled that a statute will not be declared unconstitutional unless it clearly, palpably, and without doubt infringes the constitution. We have often stated that every reasonable doubt must be resolved in favor of constitutionality. Zilm v. Zoning Board of Adjustment, Iowa, 150 N.W.2d 606, 609, 610 (1967); Hansen v. Haugh, Iowa, 149 N.W.2d 169, 174 (1967), and citations.

■ It is also well established that the constitution should be liberally construed so one act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto. Long v. Board of Supervisors, 258 Iowa 1278, 142 N.W.2d 378 (1966); Green v. City of Mt. Pleasant, 256 Iowa 1184, 131 N.W.2d 5 (1964); Graham v. Worthington, 259 Iowa 845, 146 N.W.2d 626 (1966); Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236 (1949); State v. Talerico, 227 Iowa 1315, 290 N.W. 660 (1940); State v. Social Hygiene, Inc., Iowa, 156 N.W.2d 288 (1968); Monamotor Oil Co. v. Johnson, 3 F.Supp. 189 (S.D. Iowa, 1933), affirmed 292 U.S. 86, 54 S.Ct. 575, 78 L.Ed. 1141 (1934), and many others. Also see 8 Drake L.Rev. 66 (1958). Perhaps the statement found in State v. Talerico, supra, at 1322 of 227 Iowa, at 663 of 290 N.W., best states our present position on this question. There we said: "The decisions involving the sufficiency of titles to legislative enactments lay down

certain general rules. It is held this constitutional provision [Section 29 of Article III] should be liberally construed so as to embrace all matters reasonably connected with the title and which are not incongruous thereto or have no connection or relation therewith. It was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. However, the title need not be an index or epitome of the act or its details. The subject of the bill need not be specifically and exactly expressed in the title. It is sufficient *if all the provisions relate to the one subject indicated in the title and are parts of it or incidental to it or reasonably connected with it or in some reasonable sense auxiliary to the subject of the statute.* * * *." (Emphasis added.)

■ Counsel's attack on this title is based on the assumption that H.F. 702 "establishes new and far-ranging taxes on services," that it "creates new taxes upon a new taxpaying class." As pointed out by appellants, the history of the sales tax act shows this contention has no merit. Division VII of H.F. 702 is an amendment to Division IV, Section 422.42 et seq. of Chapter 422 of the Code and to Chapter 423 of the Code of 1966. These portions of the existing code relate to the retail sales tax and the use tax, which include the sale of some designated services. The title here expressly states that it is an act for the "modification of existing sales and use taxes." The word "modify" as used here is the equivalent of the word "amend." Webster's New International Dictionary, Second Edition. Wiley v. Corporation of Bluffton, 111 Ind. 152, 156, 12 N.E. 165, 168; In re French's Estate, 148 Misc. 313, 265 N.Y.S. 902 (1933). The purpose of the Act is adequately expressed.

The extra session of the 45th General Assembly in 1934 provided for a two percent tax on the gross receipts from all sales of tangible personal property and "a like rate of tax upon the gross receipts from the sales, furnishing or service of

gas, electricity, water," etc. The 47th General Assembly re-enacted this sales tax act and included a tax on the gross receipts from all sales of tickets or admissions to places of amusement and athletic events. The 52nd General Assembly amended the so-called sales tax act to impose the tax on a number of other business activities including the service of furnishing heat. The 61st General Assembly, in Chapter 351, amended this act to impose the tax on gross receipts "from the renting of any and all rooms, apartments, or sleeping quarters in any hotel", etc. Thus, it appears the existing sales and use tax statute did include a tax on the gross proceeds from the sale of services. In this connection we note the title to the 61st General Assembly amendment, which previously expanded the services to be taxed, read "An Act relating to sales tax." It must, therefore, be concluded that H.F. 702 is an amendment to an existing taxing statute, that it increases the tax, broadens the base, and extends the tax to other services as designated in the Act. Its extent is clearly expressed.

We do not believe it necessary or helpful to discuss the various cases relative to this matter cited by able counsel on both sides. We have carefully considered them and the distinctions referred to in the briefs. We have especially considered the Illinois cases. See People v. Chicago, B. & Q. R. Co., 290 Ill. 327, 125 N.E. 310; People ex rel. Gage v. Village of Wilmette, 375 Ill. 420, 31 N.E.2d 774 (1941); Johnson v. Daley, 403 Ill. 338, 86 N.E.2d 350 (1949). The Illinois Constitution, Section 13 of Article 4, S.H.A., we note, is not the same as our provision and, of course, the pronouncements of the Illinois court, except for reasoning, are not persuasive or controlling in this jurisdiction. See Smith-Hurd Illinois Annotated Statutes, pp. 499–565 (1964).

■ It is true, the title to H.F. 702 does not specifically refer to any tax on service, but, as stated, it does provide "for the modification" or amendment of the existing law found in Chapter 422 of the 1966 Code. We are not persuaded that the imposition of a tax on the gross receipts from other and additional services is not a sales tax in its broad sense or in the sense the term had been used in the amended law. We hold that this title is sufficiently informative and germane to the general subject of this Act, that it clearly expresses the subject matter of the Act, and we conclude the title to H.F. 702 adequately met the requirements of the Iowa Constitution.

II. In appellants' first assignment of error it is contended the trial court erred in holding that Division VII of H.F. 702 is unconstitutional on the ground that "It is vague, general and indefinite" and violative of the due process clause of the Fourteenth Amendment to the Constitution of the United States and the due process clause found in Section 9 of Article I of the Iowa Constitution, because it distinctly states the tax and the object to which it is to be applied. They maintain that portion of the Act is not so indefinite and uncertain that the courts are unable by accepted rules of construction to determine what the legislature intended, and that the Act is not unconstitutional in this regard. We agree.

■ The general rule applicable here is that one challenging the constitutionality of the legislative act on these grounds has the burden of establishing that the act is unconstitutional and must negative every reasonable basis which may sustain the statute. Knorr v. Beardsley, supra, 240 Iowa 828, 839, 38 N.W.2d 236, 243 (1949). In Graham v. Worthington, supra, 259 Iowa 845, 851, 146 N.W.2d 626, 631 (1966), we said: "There is no presumption against constitutional validity of a statute. Every reasonable presumption must be called to support the Act. A challenging party must overcome these presumptions and negative every reasonable basis which will sustain the statute. See also Kruck v. Needles, [259 Iowa 470], 144 N.W.2d 296, 301–302; Powers v. McCullough, [258 Iowa 738, 745, 746], 140 N.W.2d 378, 383–384; Stein-

berg-Baum & Co. v. Countryman, 247 Iowa 923, 929, 77 N.W.2d 15; and Knorr v. Beardsley, 240 Iowa 828, 839, 38 N.W.2d 236.

"Then in State v. Fairmont Creamery Co., 153 Iowa 702, 711, 133 N.W. 895, 42 L.R.A.,N.S., 821, we said: 'The Constitution was intended to announce certain basic principles to serve as the perpetual foundation of the state. It was not intended to be a limitation upon its healthful development, nor to be an obstruction to its progress. New days bring new problems. Legislation must meet these problems as they come; otherwise our plan of government must prove inadequate. Manifestly, we ought not to be swift to adopt such a technical or strained construction of the Constitution as would unduly impair the efficiency of the Legislature to meet its unavoidable responsibilities.'

"See also Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1336, 105 N.W.2d 650, and Miller v. Schuster, 227 Iowa 1005, 1014, 1015, 289 N.W. 702."

■ The presumption in favor of constitutionality is especially strong where, as here, the statute was enacted to promote a public purpose and relates to taxation. Cook v. Hannah, 230 Iowa 249, 252, 297 N.W. 262, 264; Id., 314 U.S. 691, 62 S.Ct. 361, 86 L.Ed. 553 (1941).

Plaintiffs' attempt to show ambiguity and vagueness in the section relating to advertising is not persuasive and, as to the other enumerated services, was inadequate, consisting mostly of questions to witnesses they deemed unanswerable.

Although in their petition the plaintiffs complained only against the tax on gross receipts from advertising, and the portion of the statute which imposes the tax on advertising, they now contend they may also challenge the constitutionality of the nonadvertising portions of the Act if it appears the invalidity of those portions vitally affects the validity of the entire Act. To support this contention, they cite Smith

v. Thompson, 219 Iowa 888, 258 N.W. 190 (1934); Kruidenier v. McCulloch, 258 Iowa 1121, 142 N.W.2d 355 (1966); Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); and several foreign cases. We shall consider this contention infra.

■ Sales tax statutes by their nature are excise taxes and, as such, are not subject to the constitutional objections applicable to property taxes. Plank v. Grimes, 238 Iowa 594, 598, 28 N.W.2d 34, 36 (1947); Solberg v. Davenport, 211 Iowa 612, 621, 232 N.W. 477, 483 (1930). It is also clear that a statute is not unconstitutionally vague merely because clearer or more precise language could have been used. In Tolerton & Warfield Co. v. Iowa State Board of Assessment & Review, 222 Iowa 908, 916, 270 N.W. 427, 432 (1936), we said: "A law should not be held invalid as unworkable because of uncertainty of meaning, unless there is no other reasonable alternative." Also see Berdahl v. Gillis, 81 S.D. 436, 136 N.W.2d 633 (1965). Only when the act is so indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty what the legislature intended, or when it is so incomplete and inconsistent that it cannot be executed, that the law will be invalidated as indefinite and uncertain. State v. Coppes, 247 Iowa 1057, 78 N.W.2d 10 (1956); Berdahl v. Gillis, supra; Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402 (1932). See also 51 Am.Jur. 357, Taxation, § 303.

H.F. 702 is clear and definite in imposing a tax of three percent (3%) on the gross receipts from designated services rendered in Iowa, including advertising. Gross taxable service was adequately defined in the Act. It provides: " 'Gross taxable services' means the total amount received in money, credits, property, or other consideration, valued in money, from services rendered, furnished, or performed in this state and embraced within the pro-

visions of this division. * * *" Clearly, persons engaged in the business of operating any of the listed or enumerated activities solely in Iowa are taxed on their gross receipts. Advertising was only one of the enumerated services added to existing use and sales tax statutes. It provides inter alia: "* * * newspaper, directories, shopper's guides and newspapers whether or not circulated free or without charge to the public, magazine, radio, movie, and television advertising, to include such advertisement and service rendered, furnished, or performed by the state of Iowa, its boards and commissions or any installation thereof; outdoor and point-of-purchase performance advertising; * * * printing and binding; promotion and direct mail; * * *." These enumerated services do not appear to be uncertain or incapable of judicial interpretation.

As previously pointed out, the existing law included a tax on gross receipts on designated services rendered within this state. Among them were the gross receipts "from the sales, furnishing or service of gas, electricity, water, heat, and communication service," receipts from "places of amusement and athletic events," and rentals from hotel and rooming houses. See Chapter 196, Laws of the 47th General Assembly; Chapter 227, Laws of the 52nd General Assembly; and Chapter 351, Laws of the 61st General Assembly. We are satisfied the new tax rate of 3% is definite, the measurement of the tax clear, and the advertising services intended sufficiently designated.

True, what is included in outdoor and point-of-purchase performance advertising may be somewhat uncertain, or the extent of some of the other advertising services designated may be somewhat unclear, but we do not believe under this record they can be found to be so indefinite or vague as to require the voiding of this section of the Act or the Act itself. We believe they are capable of judicial interpretation, and so hold.

As pointed out by appellants, the legislature clearly intended to impose a 3% tax on the gross receipts from the sale of *all* advertising services rendered in this state. There are no exceptions, express or implied, contrary to plaintiffs' allegation that almost 25% of advertising is not covered by the Act. A mere showing that the Commission has failed to collect a tax on some advertising is not sufficient to show it was not taxable under the law. See 2 Am.Jur.2d, Administrative Law, §§ 335, 337. In any event, at this time we are concerned with the validity of the statute, not with the validity or correctness of any administrative decisions of the Commission or the director.

Appellants further contend that plaintiffs had no standing to attack any portion of the Act which does not directly affect them. In support of this proposition they cited Iowa Hotel Ass'n v. State Board of Regents, 253 Iowa 870, 114 N.W.2d 539 (1962); Mid-America Pipeline Co. v. Iowa State Commerce Commission, 255 Iowa 1304, 125 N.W.2d 801 (1964); Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 105 N.W.2d 650 (1960); and Commonwealth of Massachusetts v. Mellon, 262 U. S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

As a general rule the constitutionality of a statute is to be considered in the light of the standing of the party who seeks to raise the question and of its particular application. It is a firmly-established principle of law that the constitutionality of a statute or ordinance may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute. A showing only of such interest in the subject of the suit as the public generally has is not sufficient to warrant the exercise of judicial power to determine the constitutionality of a statute. 16 C.J.S. Constitutional Law § 76. In Buda v. Fulton, Iowa, 157 N.W.2d 336, 341 (1968), we said: "This court has consistently held a constitutional challenge must specify the provisions invoked and

state with particularity the details of any claimed transgression. (Citations)" There was no such attack on other portions of the Act made in plaintiffs' petition herein, and we will not undertake a general review of all other services enumerated in this Act, some of which counsel admits are not subject to the vagueness charge.

■ Nevertheless, appellees maintain that the evidence submitted tends to sustain their position that they, as taxpayers, were affected not only by advertising but by the other enumerated services taxed in this division. However, as stated, there was no complaint in plaintiffs' petition that they were adversely affected by other than the tax on advertising service. Such an issue, of course, cannot be raised for the first time in this court. Verschoor v. Miller, 259 Iowa 170, 143 N.W.2d 385, 389 (1966). Although we believe the trial court correctly limited their challenge in the court below to the advertising portions of the Act and its title, appellees correctly maintain that if it can be shown that portions of an act are so connected and interdependent in object and subject matter, meaning and purpose, that the elimination of part would result in a condition not contemplated or desired by the legislature, then the whole act must fall. Smith v. Thompson, supra; Kruidenier v. McCulloch, supra. It is true, where it is alleged and proven that the portion of an act attacked is inseparable from other portions, the court may declare the entire act unconstitutional. This rule is clearly set out in 16 Am.Jur.2d, Constitutional Law, § 126.

■ It is also well settled that, where the portions of a statute are separable and there is a savings clause such as appears in Section 49 of H.F. 702, which states if a sentence, clause or phrase of this Act may be declared unconstitutional or invalid, this shall not affect the validity of the remaining portions of the Act, the whole Act need not fall because of such declaration. Davidson Bldg. Co. v. Mulock, 212 Iowa 730, 756, 235 N.W. 45, 56, and citations.

No sufficient showing of inseparability was made herein.

■ In any event, it would appear the various services enumerated in this Act are separable and, should any of them be declared invalid for vagueness or any other reason in a separate action, this would not necessarily cause the whole Act to fall. Consequently, we find no reversible error in the court's order limiting the issue of vagueness to the advertising portions of the Act.

■ III. Appellants next contend the trial court was in error in holding that Division VII of H.F. 702 is unconstitutional on the ground that "it delegates absolute, unregulated and undefined discretion as well as arbitrary and discriminatory power to the Tax Commission" in violation of Section 1 of Article III of the Iowa Constitution. They maintain the legislature did not delegate its power, but merely continued the authorization previously given the Tax Commission to adopt rules and regulations not inconsistent with the provisions of the Act for the purpose of administering it, that the commission is merely authorized to determine when a taxpayer falls within a class prescribed by the legislature as taxable, and that this is not an unconstitutional delegation of legislative power to the commission. We agree.

Section 422.61 of the Code as amended by the 62nd General Assembly provides:

"The director shall have the power and authority to prescribe all rules and regulations not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes."

We find no provision of H.F. 702 that changes or alters this provision of the law which has been a part of the sales tax statutes since 1934. Whatever authority was given the commission, now the director, is found in the existing sales tax statutes as amended by H.F. 702. The language authorizing the director to make necessary

rules and regulations for the administration of this sales tax law was expressly approved by us in Vilas v. Iowa State Board of Assessment & Review, 223 Iowa 604, 273 N.W. 338. We said therein at page 619 of 223 Iowa, at page 346 of 273 N.W.: "The legislature did not delegate its power, but merely authorized the board to adopt rules and regulations not inconsistent with the provisions of the act, for the purpose of administering the act. The rates are fixed by the Legislature, the board merely determines when an individual comes within the classes prescribed by the Legislature as being taxable under said rates."

In Hubbell v. Higgins, 148 Iowa 36, 44, 126 N.W. 914, 917, we considered the delegation of authority by the legislature and said: "The power to make rules and regulations in the nature of subsidiary legislation may be delegated by the Legislature to a local board or commission; such rules being subject to be tested in the courts to determine whether they reasonably are directed to the accomplishment of the lawful purpose of the statute under which they were made."

Of course, the power delegated must be properly restricted so that it carries out the plan after the legislature has laid down an intelligible and complete declaration of policy which is definite in describing the subject to which it relates or to the field wherein it shall apply. Burlington Transp. Co. v. Iowa State Commerce Commission, 230 Iowa 570, 576, 298 N.W. 631, 634 (1941). We recognized the limitation of this power in City of Ames v. State Tax Commission, 246 Iowa 1016, 1022, 71 N.W.2d 15, 19 (1955), and in Lewis Consolidated School Dist. v. Johnston, 256 Iowa 236, 127 N.W.2d 118 (1964). In Johnston the statute purported to grant to the State Superintendent unlimited power to approve or disapprove all schools under his supervision without guidelines or classifications. It was declared unconstitutional. No such delegation of power is found herein, and no broad general authority to decide what

services are or are not taxed is given to the director.

The only area of difficulty in this portion of the Act appears to be in determining when a person rendering a business service in this state falls within the services enumerated. It is appellees' position that since there are ambiguities in the extent of services enumerated which must be resolved by the director, this amounts to an unlawful delegation of legislative power. It is appellants' position that this complaint merely relates to the possibility that the director will transcend constitutional limits in resolving these questions and, because that opportunity or possibility exists, there has been an unlawful delegation of legislative power. The short answer to this contention, of course, is that if and when such exercise is attempted, the courts will review the ruling and uphold or strike it down. Continental Baking Co. v. Woodring, supra, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402. The court there said at pages 368, 369 of 286 U.S., at page 600 of 52 S.Ct.: "Whatever uncertainty may exist with respect to possible regulations of the commission will be resolved as regulations are promulgated. If any of these transcend constitutional limits, appellants will have their appropriate remedy. * * * The terms of the statute do not require action by the commission which does not have reasonable relation to that purpose. In this respect, as well as in relation to the other matters above-mentioned, appellants had no right to resort to equity merely because of an anticipation of improper or invalid action in administration." Also see Clarion Ready Mixed Concrete Co. v. Iowa State Tax Comm., 252 Iowa 500, 107 N.W.2d 553 (1961), for the remedy available for abuse of delegated authority by a commission.

Plaintiffs' attack here is not made upon the basis of any regulation adopted by the commission or director concerning either the tax on advertising or on any other of the added services. The attack is made upon the terms of the statute itself and,

since the Act only extended the list of services to be taxed and we have held the powers granted in Section 422.61 did not constitute an unlawful delegation of legislative power, we find little basis for this complaint. Vilas v. Iowa State Board of Assessment & Review, supra.

The following statement by the Supreme Court of South Dakota in Berdahl v. Gillis, supra, 81 S.D. 436, 136 N.W.2d 633, 637 (1965), where a similar statute extending their sales tax to a long list of services and professions was challenged on the ground of an unconstitutional delegation of legislative power to the commissioner of revenue, is appropriate here:

"Petitioner is critical of the act because it is not more explicit in stating who are subject to the act and who are exempt. He poses many hypothetical situations in the future operation of the act and suggests that the Commissioner in resolving them would be exercising the legislative function. Obviously the law would be easier of administration if it were more precise, but with the complexities of present day social and economic problems this is not always possible or practical. 'Occupation and privilege tax statutes are frequently lacking in any extended definition of the precise occupation or privilege subject to taxation, and it consequently devolves upon the courts to find a practical definition.' 51 Am.Jur., Taxation, § 320.

"Although the Commissioner may be required to make such determinations in the first instance, they must remain undecided until presented as an issue before the courts. Great Northern Ry. Co. v. Graff, 71 S.D. 595, 28 N.W.2d 77. Also see In re Ebeling's Estate, 169 Wis. 432, 172 N.W. 734, 4 A.L.R. 1519. The Commissioner's interpretation and construction of the terms of the statute are only an administrative guess at a judicial question. Utah Hotel Co. v. Industrial Commission, 107 Utah 24, 151 P.2d 467, 153 A.L.R. 1176. Consequently, we think it clear that when the Commissioner interprets the statute he is not legislating."

Here also when the director is called upon to decide whether a certain service includes some advertising activities and not others, he is interpreting the statute subject to a court decision. He is not legislating. In two recent cases we have upheld acts which gave to administrative officers duties which affected the public. In Spurbeck v. Statton, 252 Iowa 279, 106 N.W.2d 660 (1960), we upheld a statute which authorized the department of public safety to suspend a driver's license when certain facts were shown, as not an unlawful delegation of legislative power, and in State v. Rivera, Iowa, 149 N.W.2d 127 (1967), we upheld the delegation of authority to place signs prohibiting passing on the left thereof by the highway commission.

We are satisfied that there was no unlawful delegation of legislative power to the director in this Act, particularly as to the services of advertising attacked in these proceedings.

IV. The trial court held that H.F. 702 is unconstitutional on the ground that it violates Section 8, Article I, of the United States Constitution, usually referred to as the Commerce Clause, which delegates the power to the Congress of the United States to regulate commerce among the several states. Appellants contend this was error because the Act and the tax imposed are not invalid and are not burdensome or discriminatory on interstate commerce even though some interstate service receipts may be subject to the tax. Appellees, on the other hand, contend the Act imposes a direct tax on gross receipts derived from services rendered in interstate commerce, that it imposes a tax on interstate commerce which is burdensome and discriminatory, and that the Act does not attempt to fairly apportion the tax upon the basis of the intrastate and interstate services rendered.

Resolving these issues is not without difficulty. If we agree with appellants and hold the Act does tax advertising media which to some extent engages in interstate

activities, but that these activities do not violate the commerce clause, considerable reliance must be placed upon the holding and decision of the United States Supreme Court in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L. Ed. 823, 115 A.L.R. 944 (1938), and, to some extent, New Yorker Magazine, Inc. v. Gerosa, 3 N.Y.2d 362, 165 N.Y.S.2d 469, 144 N.E.2d 367 (1957), appeal dismissed 356 U.S. 339, 78 S.Ct. 777, 2 L.Ed.2d 809. We will discuss them and others later. If we agree with appellees that this is an attempt to levy a tax which is a direct and undue burden on interstate commerce or the gross receipts therefrom, we must rely somewhat on the cases of Cooney v. Mountain States Telephone & Telegraph Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934 (1935); Fisher's Blend Station v. State Tax Comm., 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956 (1936); Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946), and other similar cases which consider the problem of undue burdens upon interstate commerce. These cases also have been examined with care.

This conflict has constantly been raised before the United States Supreme Court in the past 150 years. Decisions sometimes appear in hopeless conflict, and the opinions defining the extent of this clause find many vigorous dissents. The delicate balance between federal and state authority in this field was recognized by Mr. Justice Holmes in Superior Oil Co. v. State of Mississippi ex rel. Knox, 280 U.S. 390, 395, 50 S.Ct. 169, 170, 74 L.Ed. 504, 505, 507 (1930), where he said: "The importance of the commerce clause to the Union of course is very great. But it also is important to prevent that clause being used to deprive the States of their lifeblood by a strained interpretation of facts. We may admit that this case is near the line." We must admit the same is true in the case before us.

Generalities are of little aid in resolving the problem. In Robbins v. Shelby County Taxing District, 120 U.S. 489, 497, 7 S.Ct.

592, 596, 30 L.Ed. 694, 697 (1887), it is said: "Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, * * *." Although recognized in Freeman v. Hewit, supra, this generality is not consistently followed. On the other hand, in Postal Telegraph-Cable Co. v. City of Richmond, 249 U.S. 252, 259, 39 S. Ct. 265, 266, 63 L.Ed. 590, we find a generality often repeated that "Even interstate business must pay its way."

The frustration of the United States Supreme Court, as well as the complexity of the problem, are recognized by Mr. Justice Clark in Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 457, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421, 426 (1959), wherein there were separate concurrences and two written dissents. He said: "That there is a 'need for clearing up the tangled underbrush of past cases' with reference to the taxing power of the States is a concomitant to the negative approach resulting from a case-by-case resolution of 'the extremely limited restrictions that the Constitution places upon the states * * *.' State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 445, 61 S.Ct. 246, 85 L.Ed. 267 (1940). Commerce between the States having grown up like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation. This Court alone has handed down some three hundred full-dress opinions spread through slightly more than that number of our reports. As was said in Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 344, 74 S.Ct. 535, 98 L.Ed. 744 (1954), the deci-

sions have been 'not always clear * * * consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law.' From the quagmire there emerge, however, some firm peaks of decision which remain unquestioned."

Perhaps the best, or at least the latest, guideline we have is set out in Freeman v. Hewit, supra, at page 252 of 329 U.S., at page 276 of 67 S.Ct.: "To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future. Suffice it to say that especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts." Thus, if a similar fact situation in a similar industry has been considered by the United States Supreme Court, it would seem proper to rely on it as a commerce clause precedent. This being true, the State contends that Western Live Stock v. Bureau of Revenue, supra, having never been reversed or modified by the Supreme Court, fully sustains its position, especially in the newspaper field.

Here we find a substantial part of the circulation of the Davenport Times-Democrat newspaper is in Illinois, and that the Iowa radio and television stations of WOC and WOC–TV have circulation or dissemination in Illinois and Wisconsin. It also appears advertisers generally take this fact into account when placing ads in these news media. Because of the scope of coverage, a greater charge is made for the space or time sold to the advertiser. That these activities involve interstate commerce cannot be denied. Our problem, then, is to decide whether this is such a distribution, circulation or dissemination as to bar the State of Iowa from taxing the gross receipts from these activities. Does this constitute a violation of the commerce clause or place an undue burden on commerce? We hold it does neither.

The tax is not aimed at interstate commerce as such. It applies to all taxpayers for *services rendered in this state*. Since there were no provisions for fair apportionment of the revenue from such advertising, to exempt those advertisers who seek media which have some interstate aspects would seem unfair and unjust to those media which do not have substantial circulation outside the state.

The litigants here are not out-of-state persons or entities who are being penalized because they seek to do business in our state. They are, for the most part, local enterprises receiving all the benefits this state gives to every citizen. It seems unreasonable and unjust to permit these advertisers to escape a legitimate state tax on the ground that the media have effective trade areas beyond the state border.

Of course, all interstate commerce is not per se immune from state taxation. In order for it to be exempt, it must be *shown* that the same revenue may be likewise taxed by another state to be classified as an undue burden thereon. If, then, it appears that the circulation or dissemination of the advertising purchased in Iowa, when printed, published or broadcast in Iowa, is not such a taxable event as to permit another state also to tax the revenue from such sale, then no undue burden on interstate commerce occurs. Appellees do not explain how such a tax could be levied or collected by the State of Illinois. On the other hand, appellants contend this question was considered and resolved in the Western Live Stock case. A close examination of that Supreme Court decision thus seems necessary here.

True, the tax imposed therein was a privilege tax levied intentionally on local activities, i.e., the publication and printing of a magazine, measured by total income. That law specifically noted by the court provided: "At an amount equal to two per cent of the gross receipts of any person engaging or continuing in any of the following businesses: Laundries * * *

cleaning or pressing * * * publication of newspapers and magazines (but the gross receipts of the business of publishing newspapers or magazines shall include only the amounts received for the sale of advertising space), bill-boards, and any other business in which services (not professional) are performed on a price or fee basis." On the other hand, our Act seeks to tax the gross proceeds from the sale of advertising services to be rendered or performed by the various news media, not the proceeds from the sale of space. Obviously, this would include intrastate and interstate distribution, but is this such a difference as to justify a different conclusion as to the imposition of an undue burden on commerce? We think not. It seems Western Live Stock considered this question and held that, although interstate circulation is contemplated in the business taxed, it did not cause the commerce clause to be violated.

In Western Live Stock, as here, the media was engaged in the preparation, editing and printing of a publication within the taxing state. There it was a monthly journal, and here a daily newspaper. Each imposes a percentage tax on the gross receipts from advertising services. Each had substantial circulation outside the home state. Each case had advertisers from outside the home state, and in each case the State purported to tax the entire advertising income without apportionment. This income in each case is calculated after circulation and distribution, local and in other states. Each involves interstate shipments of cuts, mats, information, and copy. Except for the attempted space limitation in New Mexico, the case appears to be exactly in point. Since we find this limitation was considered by the Supreme Court and found not determinative of the commerce clause issue, we are justified in holding that decision binding on us.

In Western Live Stock the court struck down each of the contentions made by plaintiffs in our case. It said: "The question for decision is whether the tax laid under this statute on appellants, who sell without the state, to advertisers there, space in a journal which they publish in New Mexico and circulate to subscribers within and without the state, imposes an unconstitutional burden on interstate commerce." It noted: "The journal has a circulation in New Mexico and other states, being distributed to paid subscribers through the mails or by other means of transportation. It carries advertisements, some of which are obtained from advertisers in other states through appellants' solicitation there. * * * Payment is due after the printing of such advertisements in the journal and its ultimate circulation and distribution, which is alleged to be in New Mexico and other states." Among other things, the appellants contended the sums earned from the advertising contracts were immune from the tax "because performance involves the mailing or other distribution * * * to points without the state."

The court then stated: "That the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, unless the performance is within its protection, is a proposition no longer open to question. (Citations) * * * Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business. (Citations)"

The court next considered the more "vexed question" of "whether the tax is invalid because the performance of the contract, for which the compensation is paid, involves to some extent the distribution, interstate, of some copies of the magazine containing the advertisements" and said: "We lay to one side the fact that appellants do not allege specifically that the contract stipulates that the advertisements shall be sent to subscribers out of the state,

or is so framed that the compensation would not be earned if subscribers outside the state should cancel their subscriptions. *We assume the point in appellants' favor* and address ourselves to their argument that the present tax infringes the commerce clause because it is measured by gross receipts which are to some extent augmented by appellants' maintenance of an interstate circulation of their magazine. It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. * * * and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the costs of his business." (Emphasis added.)

The court then discusses fair apportionment of such a tax to the use within the originating state, and cites cases where it will be sustained. It further recognized that in some cases local taxes measured by gross receipts from interstate commerce have been held invalid, and stated: "The vice characteristic of those which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable, in point of substance, of being imposed, Fargo v. Stevens, Michigan, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888; Philadelphia & S. S. S. Co. v. Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200, * * * Fisher's Blend Station Inc. v. State Tax Commission, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956, with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce. (Citations) The multiplication of state taxes measured by the gross receipts from interstate transactions would spell the destruction of interstate commerce and renew the barriers to interstate trade which it was the object of the commerce clause to remove. Baldwin v. G. A.

F. Seelig, 294 U.S. 511, 523, 55 S.Ct. 497, 500, 79 L.Ed. 1032." Reaffirming this view is the recent decision in General Motors Corp. v. Washington, 377 U.S. 436, 439, 448, 84 S.Ct. 1564, 12 L.Ed.2d 430, 434, 439 (1964).

After discussing cases where apportionment was required, the court then concluded: "In the present case the tax is, in form and substance, an excise conditioned on the carrying on of a local business, that of providing and selling advertising space in a published journal, which is sold to and paid for by subscribers, some of whom receive it in interstate commerce. The price at which the advertising is sold is made the measure of the tax. * * * the tax assailed here finds support in reason, and in the practical needs of a taxing system which, under constitutional limitations, must accommodate itself to the double demand that interstate business shall pay its way, and that at the same time it shall not be burdened with cumulative exactions which are not similarly laid on local business."

It would appear, then, that this case, which is later than the Fisher's Blend case relied upon by appellees, lays down the rule that if the circulation or dissemination is incidental to the business of publishing advertising matter, the revenue obtained for the publication is not subject to multistate taxation, and a tax levied on the gross proceeds of the service, although obtained partially because of its circulation to customers in other states, is not a violation of the commerce clause. Emphasizing this point the court said: "* * * the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce, and the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce. (Citations) No one would doubt that the tax on the privilege would be valid if it were measured by the amount of advertising space sold [or by its value]. (Cita-

tions) Selling price, taken as a measure of value whose accuracy appellants do not challenge, is for all practical purposes a convenient means of arriving at an equitable measure of the burden which may be imposed on an admittedly taxable subject matter. * * * So far as the advertising rates reflect a value attributable to the maintenance of a circulation of the magazine interstate, we think *the burden on the interstate business is too remote* and too attenuated to call for a rigidly logical application of the doctrine that gross receipts from interstate commerce may not be made the measure of a tax. * * * Recognizing that not every local law that affects commerce is a regulation of it in a constitutional sense, this Court has held that local taxes may be laid on property used in the commerce; that its value for taxation may include the augmentation attributable to the commerce in which it is employed; and, finally, that the equivalent of that value may be computed by a measure related to gross receipts when a tax of the latter is substituted for a tax of the former. See Galveston, H. & S. A. R. Co. v. State of Texas, supra, 210 U.S. 217, 225, 28 S.Ct. 638, 52 L.Ed. 1031." (Emphasis added.)

The court then observed: "So far as the value contributed to appellants' New Mexico business by circulation of the magazine interstate is taxed, it cannot again be taxed elsewhere any more than the value of railroad property taxed locally. *The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine.* As already noted, receipts from subscriptions are not included in the measure of the tax. It is not measured by the extent of the circulation of the magazine interstate. All the events upon which the tax is conditioned —the preparation, printing and publication of the advertising matter, and the receipt of the sums paid for it—occur in New Mexico and not elsewhere. All are beyond any control and taxing power which, without the commerce clause, those states could

exert through its dominion over the distribution of the magazine or its subscribers. The dangers which may ensue from the imposition of a tax measured by gross receipts derived directly from interstate commerce are absent." (Emphasis added.)

The court concluded by attempting to distinguish Fisher's Blend Station v. State Tax Comm., supra, and stated that case involved an occupation tax on broadcasting, which itself was interstate communication comparable to the businesses of telegraph and telephone.

We turn then to the New York case of New Yorker Magazine, Inc. v. Gerosa, supra. Although the New York decision upholding the tax validity was appealed to the United States Supreme Court and dismissed, we find therein a factual situation similar to that in Western Live Stock and even more similar to the case at bar. Eighty percent of the circulation of the magazine, prepared and edited in New York, occurred outside the geographical area of the taxing body, New York City, and was sold at newsstands throughout the country. Complete reliance was placed on the Western Live Stock decision and much of it was quoted in that opinion. In light of this state court opinion and the action of the United States Supreme Court in its dismissal of the appeal, which stated: "April 28, 1958. PER CURIAM. The motion to dismiss is granted and the appeal is dismissed for want of a substantial federal question. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823.", we must assume general circulation of a locally-printed paper or magazine in other states is not such a taxable event that will cause the state tax on gross proceeds of the advertising sales in that state to be invalid under the commerce clause of the federal constitution.

Another state case which seems to sustain the State's contention that the Iowa tax is valid as applied to printed media advertising is Department of Treasury v.

South Bend Tribune, 216 Ind. 285, 24 N. E.2d 275 (1939).

We find no similar case since Western Live Stock which reaches a contrary conclusion and, except for dicta in Fisher's Blend, no federal pronouncement which involves the circulation, dissemination or distribution of printed advertising across state lines. We, like the New York court, hold the Iowa excise tax levied upon printed media advertising revenue derived from newspapers and magazines sold and circulated both in this state and in other states is valid, and that the tax levied here applies to plaintiff publishers.

Having held Western Live Stock controlling in the field of printed advertisements circulated interstate, we find it impossible to justify a different conclusion as to the tax on radio and television advertising originating in this state. In fact, if the Western Live Stock rationale is adopted, it would appear even more applicable to radio and television advertising.

Western Live Stock acknowledges that some interstate commerce is present, but in effect holds that the tax laid upon this commerce is not an undue burden on interstate commerce because such a tax could not be repeated elsewhere. In other words, other states could not tax gross receipts from advertising sold, printed and published in New Mexico by claiming that the circulation of those advertisements in their states was a taxable event upon which to base such a tax. To a like effect, see General Motors Corp. v. Washington, supra.

That such a tax could not be repeated would appear to be even more true in the case of the broadcasting media. All the activity performed by an Iowa radio station in the broadcasting of commercial messages takes place in Iowa. The dissemination is much the same as a man with a loudspeaker shouting from an Iowa bluff across the river into Illinois. No dissemination activity takes place in Illinois. Only the message carried on sound waves is heard there. This, of course, is less taxable activity than appears by circulating a newspaper in another state. It is true the radio and television stations send out or create electrical impulses or waves, which is the artificial method of carrying words or pictures beyond that provided by nature, but how can this method of dissemination be taxed in another state? Appellees do not tell us. True, when an advertiser buys air time on a Davenport radio station, he contemplates that people in that effective trade area will receive the message broadcast, but this is no different from that contemplated by a purchaser of advertising space in a magazine which will be circulated in other states. In either case, the advertiser who buys time or space could not complain if the message was not delivered due to the fact that no one paid any attention to the ad printed or broadcast. Certainly there is nothing tangible which can be taxed in the other state in T.V. or radio messages such as there might be in printed advertisements. Radio or T.V. receivers clearly would not fall into that category.

This is not the case where a privilege tax is levied on the operation of a radio or T.V. station as such. It is not the same as a tax on gross receipts from telephone and telegraph messages, which include both local and interstate operations.

The Supreme Court in Cooney v. Mountain States Telephone & Telegraph Co., supra, held a state occupation tax on every corporation engaged in the business of operating telephone lines and furnishing telephone service in the state, at so much for each telephone instrument used, controlled and operated by it in conducting intrastate and interstate business, amounted to a direct burden on interstate commerce and was invalid. The court said there the tax was laid indiscriminately with respect to the facilities, regardless of their use, and held that where the tax is exacted from one doing both interstate and intrastate business, it must appear that the tax is imposed solely on account of the latter, that the amount exacted is not increased be-

cause of the interstate business done, and that one engaged exclusively in interstate commerce would not be subject to the tax. There the operation of the unified system resulted in a direct tax on interstate commerce, a tax on an event which occurred in another state and, although the issue of undue burden was not discussed, it is clear that if the tax had been only on an event occurring within the taxing state, the tax would have been declared valid.

It may be true, the radio and television stations in Iowa are engaged in both intrastate and interstate activities, but they perform no taxable function in another state by so doing. Advertising originating in the Iowa station has little or no relationship to out-of-state functions and, beyond that of being seen or heard by a resident of the other state if he has a personally-owned and operated receiver, no significant incident occurs in the other state.

We find no federal case in point, with the possible exception of Fisher's Blend Station v. State Tax Comm., supra. There also the broadcasting operations were confined to the taxing state, but the programs were heard over several states. The tax was on the privilege of broadcasting. However, in no practical sense was there any risk of a cumulative tax burden shown. This fact has caused much speculation as to whether, since Western Live Stock, and General Motors Corp. v. Washington, both supra, there was any risk of a cumulative tax burden in such operations sufficient to condemn the tax. This question, so far as we know, has never been considered or answered by the Supreme Court.

In an article appearing in 57 Harv.L. Rev. 72–76, the author discusses the problem present in Fisher's Blend and has this to say regarding it:

" * * * The mere fact that radio waves reach into other states would hardly give those states jurisdiction to tax the gross receipts derived from broadcasting operations conducted exclusively within the State of Washington. Even the Western Live Stock opinion did not suggest this fantastic possibility. The explanation given there was that 'if broadcasting could be taxed, so could reception,' thus causing a 'cumulative tax burden * * * on interstate communication.' This was an unrealistic and unsuccessful attempt to distinguish the Fisher's Blend case. If such an unlikely tax were imposed it would not result in a cumulative burden within the meaning of that doctrine in current cases. This is demonstrated by the Western Live Stock decision itself, where the Court sustained a tax involving a greater risk of such a cumulative burden than did the Fisher's Blend tax.

"The type of tax on reception which the Court had in mind was a privilege or license tax imposed on the ownership or operation of radio receiving sets. Such a tax would not be borne by the radio broadcasters, or their advertisers, and would have no substantial effect upon the business of engaging in interstate radio broadcasting. Only one such tax appears to have been imposed in the United States, and that had been held invalid. [See Station WBT v. Poulnot, 46 F.2d 671 (D.S.C.1931)] On the other hand, at the very time the Western Live Stock tax was justified on the 'added' ground that it involved no danger of a cumulative burden, approximately half of the states of the United States imposed a two or three per cent sales tax upon the sale of all magazines, including the magazine in question in the Western Live Stock case, and an increasing number of states were also imposing a use tax applicable to magazine sales which escaped the sales tax because of interstate subscriptions. Here were existing taxes, of which the Court must have been conscious, varying directly with the volume sold, and constituting a far more direct and concrete burden upon the business of magazine publishing than would a tax on radio reception upon the business of broadcasting. Certainly, if a tax on the gross receipts from magazine advertising, coupled with a sales tax on

distribution of the magazine, did not constitute a forbidden cumulative or multiple burden, neither would a tax on gross receipts from radio advertising coupled with a tax on ownership or operation of receiving sets.

"Apart from this one reference to a possible cumulative burden in explaining the troublesome Fisher's Blend decision, all other references to a multiple or cumulative burden on interstate commerce in the Western Live Stock and subsequent cases have indicated that a much more definite and concrete threat was meant. What the Court had in mind was the danger that two or more states might impose the same tax, or same type of tax, on the same interstate transaction, when comparable local commerce would bear only one. Thus, in the Western Live Stock opinion, the Court explained that the 'vice characteristic' of the invalid gross receipts taxes was that they placed on commerce 'burdens of such a nature as to be capable * * * of being imposed * * * or added to * * * with equal right by every state which the commerce touches * * *.' Specifically, what the Court feared was the 'multiplication of state taxes measured by gross receipts from interstate transactions * * *' The Court's explanation as to why the Western Live Stock tax did not threaten this cumulative burden makes it clear that the Court had in mind a tax which could be duplicated by other states on the same transaction.

"* * * That is all equally true of a tax measured by the gross receipts of a radio broadcaster operating exclusively within the taxing state. All of the events upon which the tax is conditioned occur in the taxing state, and not elsewhere—except possibly the solicitation of the advertising by agents elsewhere, but the Western Live Stock case held that such solicitation makes no difference.

"Subsequent decisions bear out this conclusion that what is meant by the forbidden risk of a cumulative burden is the risk of the same or a similar tax upon the same interstate transaction. The only cases in which the 'cumulative burden' argument has been relied upon as the controlling reason have stressed the danger of substantially the same tax being imposed on the same interstate transaction by one or more states. [See (I. D.) Adams Mfg. Co. v. Storen, 304 U.S. 307, 311 (58 S.Ct. 913, 82 L.Ed. 1365) (1938)]

"To extend the cumulative burden concept to condemn taxes which cannot be duplicated in other states on the ground that some other tax of a different nature might also burden the interstate transaction would go beyond the purpose for that concept. It would result in condemning taxes which threaten no heavier burden on interstate than on local commerce. Two dissimilar taxes are just as likely to be imposed by the same state as by different states, and hence just as likely to impose a heavier burden on local transactions as on interstate transactions. For example, the state with a gross receipts tax on radio broadcasters is just as likely to impose a privilege tax on radio reception as are adjoining states. Thus a gross receipts tax on broadcasting does not threaten interstate radio communication with a heavier burden than local radio communication so long as only one state has jurisdiction to tax the broadcasting itself. * * *

"It thus appears that the Fisher's Blend case cannot soundly be explained as based on the risk of a cumulative burden * * *. What, then, are we to conclude from the Court's explanation of these cases upon a ground which cannot possibly justify them? It might be thought that by citing them with apparent approval and failing to overrule them, the Court is demonstrating that it will continue to follow them. This seems doubtful. It seems more reasonable to assume that the Court is seeking in this manner to whittle these cases down to fit its current pragmatic viewpoint."

To a like effect, see articles appearing in 1 Stan.L.Rev. 740, 742; 20 U.Cin.L.Rev. 19, 27, 72; 26 La.L.Rev. 417, 420.

The Washington State Supreme Court, in Fisher's Blend, supra, upheld the tax on the ground that the business was not interstate commerce. The United States Supreme Court correctly found that this business is in interstate commerce, but such a finding does not seem to be determinative of our issue. The court did state without discussion that as appellant's income is derived from interstate commerce, the tax, measured by appellant's gross income, is of a type which has long been held to be an unconstitutional burden on interstate commerce. Apparently it did not consider the issue of undue burden or how the other states could levy a like tax on the taxpayer. This is now considered most important.

In a recent analysis by Mr. Justice Clark in General Motors Corp. v. Washington, supra, at page 440 of 377 U.S., at page 1568 of 84 S.Ct., he stated:

"A careful analysis of the cases in this field teaches that the validity of the tax rests upon whether the State is exacting a constitutionally fair demand for that aspect of interstate commerce to which it bears a special relation. For our purposes the decisive issue turns on the operating incidence of the tax. In other words, the question is whether the State has exerted its power in proper proportion to appellant's activities within the State and to appellant's consequent enjoyment of the opportunities and protections which the State has afforded. * * * we look to the taxpayer's business activities within the State, i.e., the local incidents, to determine if the gross receipts from sales therein may be fairly related to those activities."

In any event, it is clear the Iowa tax is not the same as the tax attempted in Fisher's Blend. The Iowa tax is not a tax on the privilege of broadcasting itself, which is controlled exclusively by federal regulation, but is a tax on the sale of advertising. The Iowa Act clearly taxes only the Iowa sale of advertising and this tax could not be levied elsewhere.

Fisher's Blend does not hold that a tax like the Iowa tax would be invalid. The court cites with approval Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038, and states at page 656 of 297 U.S., at page 610 of 56 S.Ct.: "Whether the state could tax the generation of such energy, or other local activity of appellant, as distinguished from the gross income derived from its business, it is unnecessary to decide."

Furthermore, Fisher's Blend was decided prior to the Western Live Stock decision and we must, therefore, resolve any conflict between them in favor of the more recent decision.

We conclude Fisher's Blend does not control the case at bar and hold that the Act does not impose such an undue burden on interstate commerce as will invalidate it.

V. Appellants next contend the trial court erred in holding Division VII of H. F. 702 unconstitutional on the ground that there is no reasonable relationship between the classification adopted by the legislature and the purposes of the Act, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution and in violation of Article I, Section 6, of the Iowa Constitution. We agree.

Appellees' contention that Division VII excludes a substantial number of other advertising services, and that it also unreasonably excludes other services from taxation, has no merit. As previously indicated, we find nothing in this record to sustain the claim that about 25% of advertising was excluded from the Act or that the classification of other services taxed was arbitrary and unreasonable.

It is true, as appellees contend, that there must be uniform operation of the Act within particular classifications. Their specific contention is that a substantial amount of advertising service is excluded under Division VII of H.F. 702, thus re-

sulting in unequal operation within a classification. They argue that novelty advertising, such as printing on match covers, pencils, etc., billboards, and handbills, which their evidence shows comprises about 25% of all advertising, were excluded from taxation under the Act. Appellants deny this is true and contend all of these services are taxed under the Act. They point out that the business of advertising is broader than just publishing ads, that "It includes promotion," as testified to by the witness Munsell. They contend that novelty trading stamps, in-package items, and coupon advertising, are included under the classification of "promotion", which is specifically mentioned in the Act. In a proper case we think a court may so find. Nowhere in the language of this Act, express or implied, is there an exclusion of any advertising services, and, so far as this record is concerned, we must hold all forms of advertising are sufficiently covered by the Act.

As to the other service classifications, it is well established that when classification is adopted by the legislature it must be reasonable and also rationally related to the end sought. Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 38, 48 S.Ct. 423, 425, 429, 72 L.Ed. 770, 774, 778; Keefner v. Porter, 228 Iowa 844, 848, 293 N.W. 501, 503 (1940).

If there is any reasonable ground for the classification in a particular act, and it operates uniformly and equally upon all within the same class, this is uniformity in the constitutional sense. Dickinson v. Porter, supra, 240 Iowa 393, 400, 401, 35 N.W.2d 66, 72 (1949), and many citations; Green v. City of Mt. Pleasant, 256 Iowa 1184, 1199, 131 N.W.2d 5, 15, 16 (1964); Becker v. Board of Education, 258 Iowa 277, 282, 138 N.W.2d 909, 912 (1965). This is particularly true as to excise acts. Substantial equality and uniformity are all the law requires with reference to either a statute imposing an excise tax or an administrative rule with reference to such tax. Sandberg Co. v. Iowa State Board of Assessment and Review, 225 Iowa 103, 109, 278 N.W. 643, 646, 281 N.W. 197 (1938).

As we have indicated, it is plaintiffs' burden to negative every conceivable basis which may support the statute. Madden v. Commonwealth of Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593, 125 A.L.R. 1383, 1386 (1940); Dickinson v. Porter, supra, and exhaustive citations. We said in Porter the statute amounts to a legislative finding that there are sufficient differences between the services to which the Act applies and other services to justify the classification. We will not interfere unless the plaintiff has proven the classification does not rest on a reasonable basis but is essentially arbitrary and palpable discrimination. Iowa Motor Vehicle Ass'n v. Board of Railroad Commissioners, 207 Iowa 461, 468, 221 N.W. 364, 368, 75 A.L.R. 1, 8, affirmed 280 U.S. 529, 50 S.Ct. 151, 74 L.Ed. 595.

Division VII of H.F. 702 did not purport to be all-inclusive. The general classification is a tax on services. The legislature in its wisdom selected the special classifications to be subject thereto. In an excellent summary with extensive citations and law principles relating to the permissible classifications of tax statutes under federal and state constitutions, we said in Dickinson v. Porter, supra, at 401 of 240 Iowa, at 72 of 35 N.W.2d: " 'An iron rule of equal taxation' is neither attainable nor necessary. Merchants Supply Co. v. Iowa Employment Security Comm., supra, 235 Iowa 372, 383, 384, 16 N.W.2d 572, 578, 579, and citations; Madden v. [Commonwealth of] Kentucky, supra; Bell's Gap R. Co. v. [Commonwealth of] Pennsylvania, 134 U. S. 232, 237, 10 S.Ct. 533, 33 L.Ed. 892, 895." It is not the province of the court to pass on the wisdom and the policy of the legislature in making the classifications. Dickinson v. Porter, supra, and citations; Berdahl v. Gillis, supra, 81 S.D. 436, 136 N.W.2d 633 (1965).

Where no sanctions or penalties are involved, legislatures possess the greatest freedom in classification. This discretion as to classification is "broad". Madden v. Commonwealth of Kentucky, supra; Dickinson v. Porter, supra; Mason & Hanger etc. Co. v. State Tax Commission, 258 Iowa 531, 539, 139 N.W.2d 437, 442 (1966); Green v. City of Mt. Pleasant, supra. There were, of course, no sanctions or penalties provided in this Act.

We have carefully considered the Illinois case of Fiorito v. Jones, 39 Ill.2d 531, 236 N.E.2d 698 (1968), cited by appellees, and find it not factually applicable or persuasive here.

In light of the foregoing principles, we are satisfied the classifications here do not result in invidious discrimination or arbitrary, capricious, and unreasonable classification, and there was no adequate showing to the contrary.

VI. Cross-appellants assert the trial court erred in holding that Division VII of H.F. 702 does not abridge or violate the United States and Iowa constitutional provisions relating to freedom of speech or freedom of the press. We do not agree.

The First Amendment to the Constitution of the United States provides in part that "Congress shall make no law * * * abridging the freedom of speech or of the press * * *." This amendment, of course, is made applicable to the several states through the Fourteenth Amendment. Section 7 of Article I of the Iowa Constitution similarly provides. That these provisions are applicable to radio and television stations is not disputed. City of Baltimore v. A. S. Abell Co., 218 Md. 273, 145 A.2d 111 (1958); American Broadcasting Co. v. United States, 110 F.Supp. 374 (D. C.1953).

It is cross-appellants' contention that this provision in the federal constitution arose not merely as an immunity from "censor-ship", but from "restraints" which include direct advertising taxes. They rely on the landmark case of Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), where the court held a license tax imposed on newspapers, magazines, periodicals, and other publications having a weekly circulation in excess of 20,000 copies, and on movie theatres for the privilege of selling or exhibiting advertising, and measured the tax by two percent of the gross receipts from such advertising, was unconstitutional. They argue the press, radio, and television are thus constitutionally entitled to freedom from the control of the governments of the United States and of the various states, that this includes any form of regulation or taxation which can be used directly or indirectly as a means of political control, and that a government which enacts a tax that imposes a special burden upon the revenues of these media has a grip on that media which amounts to the power of control, citing also National Association for the Advancement of Colored People v. State of Alabama ex rel. Patterson, 357 U. S. 449, 461, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488, 1499 (1958).

On the other hand, cross-appellees contend a general revenue measure which includes provisions for the collection of revenue based upon receipts from radio, newspaper, and television advertising, does not abridge the constitutional provisions relating to free speech and freedom of the press. They rely on Giragi v. Moore, 48 Ariz. 33, 58 P.2d 1249, 110 A.L.R. 314 (1936), 49 Ariz. 74, 64 P.2d 819, 110 A.L.R. 320 (1937); Arizona Pub. Co. v. O'Neil, 22 F.Supp. 117 (D.C.1938); Reuben H. Donnelley Corp. v. City of Bellevue, 283 Ky. 152, 140 S.W.2d 1024 (1940); City of Corona v. Corona Daily Independent, 115 Cal.App.2d 382, 252 P.2d 56 (1953); Territory of Alaska v. Journal Printing Co., 135 F.Supp. 169, 15 Alaska 676 (1955); and Tampa Times Co. v. City of Tampa, 158 Fla. 589, 29 So.2d 368 (1947).

Division VII of H.F. 702 is an amendment to the Iowa sales and use tax law. This law, as amended, is of general application. It is not directed against newspapers, radio or television alone. It does not attempt to impose a tax upon advertising alone. It does include most business services rendered by the citizens of this state. We agree that the scope of the Act alone is sufficient to distinguish it from the situation in Grosjean and Abell relied upon by plaintiffs.

In Grosjean a situation existed in the State of Louisiana which, in the words of the Arizona court in Giragi v. Moore, supra, 64 P.2d 819, 823, "was unparalleled in American history." A single person had obtained control over the entire executive, legislative and judicial machinery of the state. When the great majority of the larger newspapers expressed opposition to the political setup, and the smaller ones took the opposite attitude, a statute was passed imposing a tax on newspapers with a circulation of 20,000 or more. The state court promptly held the statute unconstitutional as arbitrary and unjust, and the United States Supreme Court affirmed on the ground that it showed an abridgement of the freedom of the press.

Here, none of those engaged in the service of advertising have been singled out for a tax not generally imposed on services of a like kind and character. It is clear the taxing of advertising media at the same rate as all other services enumerated was not a "deliberate and calculated" device in the form of a tax to limit or curtail the circulation of information to the public, which is the general purpose of the constitutional guarantees.

We shall not attempt to analyze each of the cases cited by able counsel, but noted the United States Supreme Court has refused to review by certiorari many recent cases which have upheld license taxes on newspapers, magazines, and other periodicals, even when the tax is graduated upon the amount of sales by the publisher.

See Tampa Times Co. v. City of Tampa, supra, cert. denied 332 U.S. 749, 68 S.Ct. 69, 92 L.Ed. 336 (1947).

It must be concluded the Act here does not impair or infringe either the freedom of speech or the freedom of the press, does not single out the advertising industry from other similar businesses engaged in the sale of services, and does not treat advertisers unjustly or unfairly. The trial court was correct in rejecting this contention of cross-appellants.

VII. Having carefully considered the excellent briefs and arguments of counsel and the learned trial court's opinion, we are satisfied plaintiffs have failed to sustain their burden to show Division VII of House File 702, Acts of the Sixty-second General Assembly, is unconstitutional in any regard alleged.

Affirmed in part and reversed in part.

All Justices concur.